## CLAY v. ROBERTSON *et al.*

No. 1455.   Opinion Filed January 16, 1912.

(120 Pac. 1102.)

1. **DIVORCE—Setting Aside—Fraud.** A wife, the plaintiff in a divorce suit, was named "Lillie May Clay," and generally called "Lillie" by her husband and associates. Her husband was named "Allen Prior Clay," signed his name "Allen P. Clay," but was generally called "Toney." Service was by publication, in which the suit was entitled "May Clay v. Prior Clay," and defendant had no notice of the suit before decree. The affidavit for publication stated that defendant was a nonresident of the Indian Territory. He was a resident of the Indian Territory at the time, and had a defense to the suit. **Held,** that it was fraudulently obtained, and should be set aside and vacated at his suit, even after the wife's death, when his property rights were affected by the decree.

2. **HUSBAND AND WIFE—Conveyance—Interest Acquired.** A conveyance of real property to husband and wife jointly in the Indian Territory prior to statehood created an estate by entirety.

(Syllabus by Rosser, C.)

*Error from District Court, Carter County; Stillwell H. Russell, Judge.*

Action by Allen P. Clay against Chas. W. Robertson, Sr., and Chas. W. Robertson, Jr. Judgment for defendants, and plaintiff brings error. Reversed and rendered.

*Huhlett F. Aby* and *Wm. F. Tucker,* for plaintiff in error.

*Warren D. Abbott* and *Martin, Rice & Lyons,* for defendants in error.

Opinion by ROSSER, C. This is a suit by Allen P. Clay, hereinafter called plaintiff, against Chas. W. Robertson, Sr., the father of Lillie M. Clay, deceased, Chas. W. Robertson, Jr., James W. Robertson, her brothers, Victoria Price, Mamie Mowbray, Minnie Phillips, her sisters, Hazel Riggs, Willie Riggs, and Bernice Riggs, minor children of Rosa Riggs, deceased, her sister. The suit is brought to vacate and set aside a decree of divorce

rendered by the United States Court for the Southern District of the Indian Territory, at Marietta, in a suit brought in October, 1904, which was entitled "May Clay against Prior Clay." A warning order was issued in the case upon an affidavit which stated that the defendant was a nonresident of the Indian Territory. In the warning order the parties are described as "May Clay, plaintiff, against Prior Clay, defendant," and the affidavit was signed "May Clay." The proof shows that at the time the warning order was issued and published the plaintiff in this case —the defendant in that—was a resident of the Indian Territory, and that his residence was known to Lillie M. Clay. The evidence also shows that the plaintiff in this case was never known by the name of "Prior Clay," but that he usually signed his name as "Allen P. Clay," and that he was familiarly known among his associates as "Toney Clay." The evidence shows that Lillie M. Clay was never known or called by the name of "May Clay," that she was always called "Lillie" by her own family, and that some of her associates sometimes called her "Lillie May." The evidence also shows that prior to the time of the bringing of the divorce suit Lillie M. Clay had been guilty of adultery and other conduct such as would have prevented her from obtaining a divorce, had her husband known of the proceedings and made defense.

The evidence is ample to support the allegations of the plaintiff's petition that Lillie M. Clay fraudulently procured the publication of the warning order, with the design to prevent her husband from appearing in her suit for divorce and with the design to procure the divorce without notice to him; and also ample to support the allegation that he had a defense to her divorce suit. She obtained the divorce in due course, and a short time after the divorce was granted she died. Prior to her death, and while she and the defendant were living together as husband and wife, they received a patent from the Principal Chief of the Muskogee Nation to lots numbered 5 and 6, in block numbered 58, in the town of Tulsa, Ind. T. The patent recited that the Principal Chief of the Creek Nation sells and conveys "unto the said Allen P. Clay and Lillie May Clay, heirs and assigns forever, all the right, title,

and interest of the Muskogee (Creek) Nation, aforesaid, in and to lots numbered 5 and 8 in block numbered 58 in the town of Tulsa, Muskogee (Creek) Nation," and the title as conveyed by the patent remained in Allen P. Clay and Lillie M. Clay at the time of her death, unless affected by the divorce. A great number of questions are discussed in the briefs of counsel, and about 700 authorities are cited, but it is not necessary in arriving at a decision in this case to refer to all of the matters raised in the briefs, or to examine all the authorities cited. It is conceded that, unless some property right of the plaintiff was affected by the divorce decree, it cannot, though fraudulently obtained, be vacated after the death of the spouse. It is contended by the plaintiff that the estate conveyed in the patent from the Muskogee Nation to Allen P. Clay and Lillie M. Clay was an estate by entirety, and that but for the divorce the plaintiff would have succeeded to the entire estate in the land, and would have become the owner of the entire estate in fee simple. It is conceded that the divorce decree, if valid, severed or destroyed the entirety.

The question involved is settled by the Arkansas statute put in force in the Indian Territory, and the decisions of the Arkansas Supreme Court. Chapter 20 of Mansf. Dig. of Ark. (Ind. T. Ann. St. 1899, secs. 465q, 465r.) was put in force by an act of Congress approved May 2, 1890 (Act May 2, 1890, c. 182, 26 Stat. 81). That chapter provided that the common law of England, so far as applicable and of a general nature, and all statutes of the British Parliament, in aid of or to supply the defect of the common law, made prior to the fourth year of James the First, etc., should be the rule of decision in Arkansas. When this statute was extended over the Indian Territory by act of Congress, it was subject to the same construction that had been placed upon it by the Arkansas Supreme Court. *Sanger v. Flow,* 48 Fed. 152, 1 C. C. A. 56; *Stutsman v. Wallace,* 142 U. S. 293, 12 Sup. Ct. 227, 35 L. Ed. 1018; *National Live Stock Commission Co. v. Taliaferro,* 20 Okla. 177, 93 Pac. 983; *Choctaw, O. & G. R. Co. v. Burgess,* 21 Okla. 653, 97 Pac. 271; *Moore v. Adams,* 26 Okla. 48, 108 Pac. 392; *Huston v. Cobleigh,* 29 Okla. 793, 119 Pac. 416; *Hobbs v. Young,* 29 Okla. 793, 120 Pac. 946.    The

Supreme Court of Arkansas in the case of *Robinson v. Eagle,* 29 Ark. 202, decided in 1874, passed upon the question of entireties in that state, and it was held in that case that, under the common law, husband and wife were seised of an estate by entirety in land conveyed to them jointly, and that upon the death of one of them the estate remained to the survivor. It was also held that the rule was not changed by the Constitution or statutes of Arkansas. In the course of the opinion the court quotes from Blackstone's Commentaries, Book 2, p. 182, as follows:

"If an estate in fee be given to a man and his wife, they are neither properly joint tenants nor tenants in common, for, husband and wife being considered as one person in law, they cannot take the estate by moieties, but both are seised of the entirety. *'Per tout et non permy.'* The consequence of which is that neither the husband nor the wife can dispose of any part without the consent of the other, but the whole must remain to the survivor."

After further discussion, the court says:

"Sec. 6, art. 12, of the Constitution of 1868, relied upon by counsel for appellant, reads as follows: 'The real and personal property of any female in this state, acquired either before or after marriage, whether by gift, grant, inheritance, devise, or otherwise, shall, so long as she may choose, be and remain the separate estate and property of such female, and may be devised or bequeathed by her the same as if she were a *feme sole.* * * *' It is insistd by the counsel for the appellant that the clause in the Constitution of 1868, above cited, has so enlarged the rights and powers of a married woman that she is now, in contemplation of law, a distinct person, and entitled to all the privileges of a single woman. We cannot assent to such a proposition. This article only applies to the separate estate of the wife, and is intended merely to preserve it from liability for the debts of her husband, and authorizes her to devise and bequeath it. In New York, Massachusetts, and other states with similar provisions of law they have so decided. See authorities above cited, and Bingham on Real Estate, p. 169, sec. 5; *Oakley v. Aspinwall,* 4 N. Y. 513; *McIlvaine v. Kadel,* 30 How. Prac. [N. Y.] 193; *Blood v. Humphrey,* 17 Barb. 662; *Yale v. Dederer,* 18 N. Y. 265, 72 Am. Dec. 503. In conclusion, we would remark that we are not only sustained by authority and precedent, but also by sound reason and good policy. The marriage relation is a peculiar one. It is of divine origin, and He 'who spake as never man spake'

declares that 'they twain shall be one flesh.' This bond of union between husband and wife contemplates not only a union of hearts, but a union of property and all other interests, and all laws which tend to sever property rights between them certainly have the effect to weaken the ties which bind them 'for better or for worse,' and thus become a fruitful source of bickering and discontent, which often end in separation and divorce. We are aware that there has been a strong tendency of late to 'enlarge the rights of married women,' and in most states laws have been passed to protect the separate property of the wife. We doubt the policy, and would certainly not be disposed to enlarge the rule so as to include property conveyed to husband and wife jointly. We prefer to stand by the rule sanctioned by divine wisdom, as well as the decisions of the ablest jurists of England and America; a rule which has been acquiesced in for centuries in Great Britain, and approved and followed in nearly all the states."

The doctrine in this case was followed in *Kline v. Ragland,* 47 Ark. 111, 14 S. W. 474, decided in 1886. In the case of *Branch v. Poke,* 61 Ark. 388, 33 S. W. 424, 30 L. R. A. 324, 54 Am. St. Rep. 266, decided in 1895, the same question was again decided, and in *Simpson v. Biffle,* 63 Ark. 289, 38 S. W. 345, the rule was followed. The decisions are based upon the common law as adopted by the state of Arkansas in the statute above quoted, and, when that statute was extended over the Indian Territory, it gave to the people of the Indian Territory the common law as construed by the decisions of the Supreme Court of Arkansas.

It follows, therefore, that the deed or patent from the Muskogee Nation to Allen P. Clay and Lillie M. Clay created an estate by entirety, and, upon the death of Lillie M. Clay, Allen P. Clay, if her surviving husband, was entitled to the entire estate in the land. Therefore his property rights were so affected by the decree of divorce as to entitle him to have it vacated, even after the death of his wife.

It is contended by the defendants that the Arkansas decisions do not govern, for the reason that the laws of Arkansas were made for conditions and persons in all respects different from the conditions and persons which existed in the Creek Nation, and

counsel quote from the case of *Shulthis v. McDougal,* 170 Fed. 529, 95 C. C. A. 615, a passage which they believe supports this theory. It is not necessary to enter into a discussion of the case of *Shulthis v. McDougal,* concerning which the writer of this opinion has some convictions, but it is not improper to inquire in what way the conditions, with reference to this case, are different in the Creek Nation to what they are in the state of Arkansas. The question involved here is the construction of the patent. By what law was it construed? There is no statute providing a rule of construction for such instrument. It must be construed by the common law. What common law was in force in the Indian Territory? The common law, as adopted in the statutes of Arkansas, and subjected to the construction placed upon it by the Arkansas courts. If that is not the true construction, then, how should it be construed? In the courts of the Indian Territory the common law was that extended by the act of Congress, and that was the common law as it was construed and expounded by the courts of the state of Arkansas.

The case should be reversed, and judgment here rendered setting aside and vacating the decree of divorce granted by the United States Court for the Southern District of the Indian Territory, at Marietta.

By the Court: It is so ordered.

All the Justices concur.