WILLIAM A. J. GATO, In Equity,

*vs.*

GRACE L. CHRISTIAN.

Cumberland.    Opinion December 9, 1914.

*Decree.   Divorce.   Equity.   Fraud.   Injunction.   Mortgage.   Term of
Court.   Vacating Decree.*

1.   A decree of divorce may be set aside for good cause shown and a new trial
     granted by the presiding Justice at the same term at which the decree was
     entered, notwithstanding the death of the libelant in the meantime.   It is a
     power inherent in the Court, during the term at which the decree is entered.

2.   Such reversal, when made, relates back to the date of the original decree
     and renders it void from that time.

3.   That a mortgage of real estate given by the libelant, the wife, without the
     joinder of her husband, the libellee, is void, because contrary to R. S., Chap. 63,
     Sec. 1, when the property had been conveyed to her by her husband during
     coverture.

4.   That such a mortgage given by the wife between the date of the original
     decree and of its reversal is also void, even when given to a bona fide purchaser
     for value.

5.   That such a purchaser took title pendente lite, because prior to the adjourn-
     ment of the term at which the decree was granted, and therefore the title was
     liable to be defeated by a reversal of that decree.

6.   That the plaintiff's rights remain unaffected by the mortgage held by the
     defendant mortgagee, and he is entitled to equitable relief, enjoining the fore-
     closure of the same.

7.   That as a part of the proceeds of the loan made by the defendant, for which
     the mortgage was given, went to pay a prior mortgage of $300 held by one
     Bickford, in which the plaintiff joined and on which he was personally liable,
     the defendant should be subrogated to the rights of Bickford to that extent.

8.   That the bill in equity be held, in order that by proper amendments before
     a single Justice, and the bringing in of all parties in interest, redemption of the
     property from all outstanding mortgages may be obtained under the principles
     laid down in this opinion.   Temporary injunction to continue until the rights
     of the parties are finally determined.

On report on agreed statement of facts. Temporary injunction is continued, until the rights of the parties are fairly determined. Decree accordingly.

This is a bill in equity, in which the plaintiff prays that Grace L. Christian may be enjoined both temporarily and permanently from foreclosing certain mortgages, and that said mortgages may be cancelled and decreed to be void and of no effect as against the plaintiff, and that said Grace L. Christian may be ordered and decreed to surrender said mortgage deeds and discharge said mortgages. Answer of Grace L. Christian filed. The cause was reported to the Law Court on the agreed statement of facts.

The case is stated in the opinion.

*Libby, Robinson & Ives*, for plaintiff.

*W. K. & A. E. Neal*, for defendant.

SITTING: SAVAGE, C. J., CORNISH, BIRD, HALEY, HANSON, PHILBROOK, JJ.

CORNISH, J. Katie J. Gato began divorce proceedings against her husband, the plaintiff, at the January term, 1912, of the Supreme Judicial Court for Cumberland County, at which term the plaintiff appeared by his attorney and answered to the suit. At the April term, 1912, a hearing was had and a divorce granted on April 26th, in the absence of, and without notice to or the knowledge of the husband or his attorney, the presiding Justice being in ignorance of the fact that his appearance had been entered. The decree was signed and filed on May 1st, 1912. At the time of the divorce the wife held title to certain real estate in question, which had been conveyed to her on November 7th, 1889, one-half by her husband and one-half by her husband's brother, Francis E. Gato. Upon these premises she had, during coverture, placed several mortgages; one running to Heman W. Ladd on November 20, 1902, for $300 in which mortgage and the note secured thereby the husband joined. This was assigned to William H. Bickford on March 18, 1903, and on October 10, 1911, Bickford began foreclosure proceedings by publication. On November 6th, 1911, she executed a second mortgage on the same property to William D. Sawyer for the sum of $100, but in this mortgage the husband did not join. On

April 26, 1912, the date on which her divorce was granted, she executed a third mortgage to John B. Kehoe, her attorney, in the sum of $100. In this the husband did not join. On May 25th, 1912, and after the decree of divorce, Katie J. Gato executed two mortgages to the defendant Grace L. Christian, a first mortgage in the sum of $300 and a second in the sum of $400, with the net proceeds of which, the prior mortgages to Bickford, Sawyer and Kehoe were taken up and discharged. It is admitted that the agent and attorney of Grace L. Christian examined the records in the office of the Clerk of Courts to ascertain the facts in relation to the granting of the divorce, before these loans were made, and also that the plaintiff had no knowledge of the execution and delivery of these mortgages and received personally no part of the proceeds thereof.

On July 3, 1912, Katie J. Gato died intestate leaving five minor children, and no administration has been had on her estate. On July 18, 1912, and prior to the adjournment of the April term of Court, the plaintiff, as libellee, filed a motion for new trial in the divorce proceedings, alleging that in decreeing said divorce justice had not been done, because of fraud, accident, mistake or misfortune. After a hearing, ex parte and without notice to any one representing the libelant, a new trial was granted; and at the October term, 1912, the libel was dismissed. On December 19, 1912, Grace L. Christian began foreclosure proceedings by publication upon the four hundred dollar mortgage, and, prior to the expiration of the time of redemption, the plaintiff brought this bill in equity, asking that she be enjoined and restrained from foreclosing the same.

The first question that arises is the validity of the order of Court setting aside the decree of divorce and granting a new trial. This was done notwithstanding the libelant, the wife, had died in the meantime. But her death did not of itself render the decree unassailable. The great weight of authority sustains this power in the Courts where property rights are involved, although the libelant has died since the decree, and this Court in a recent case has so declared. *Stewart* v. *Leathers*, 108 Maine, 96, 27 A. & E. Ann. Cas., 366, and note page 369.

Nor does the fact that the hearing on the motion for a new trial was had ex parte render the granting of the motion void. The cases cited by the learned counsel for the defendant are not applicable, because they were subsequent and independent proceedings

in the nature of a petition for annulment, and it must be remembered that in the case at bar the motion was addressed to the presiding Justice at the same term that the divorce had been granted and before the adjournment thereof. There was no party upon whom notice could have been served, if required, because the libelant had died. And such notice in this case was not required. The Court, when convinced that the libellee had not had his day in Court and that this was due to no negligence on his part, but to some oversight or mistake on the part of the Court or of the attorney for the libelant, had the power acting upon the motion of the libellee, or even upon its own initiative to vacate the decree. It is a power inherent in the Court during the term at which the decree is entered, to correct errors and right wrongs of this nature.

"In this country all Courts have terms and vacations. The time of the commencement of every term, if there be half a dozen a year, is fixed by statute, and the end of it by the final adjournment of the Court for that term. This is the case with regard to all the Courts of the United States, and if there be exceptions in State Courts they are unimportant. It is a general rule of the law that all the judgments, decrees or other orders of the Courts, however conclusive in their character, are under the control of the Court which pronounces them during the term at which they are rendered or entered of record, and they may then be set aside, vacated, modified or annulled by that Court." *Bronson* v. *Schulten,* 104 U. S., 410, 415. This legal doctrine is universally accepted, and the power is daily exercised by the Courts, for the prevention of fraud or error and the furtherance of justice. *Fraley* v. *Feather,* 46 N. J. L., 429, and see note to *Furman* v. *Furman,* (153 N. Y., 109), 60 Am. St. Rep., at page 638, and numerous cases cited. The Court exercised that power here and vacated the decree before the final adjournment of the term at which it had been entered. Such action was clearly within its province.

The next question is the legal effect of the setting aside of this decree, upon the transfer of title by mortgage given by the libelant to the defendant after the decree signed on May 1, 1912, and before it was set aside by the order of August 1, 1912. Obviously the order vacating the decree related back to the date of the decree itself, and in the eye of the law Mrs. Gato had remained a married woman, and subject to the restrictions imposed by coverture. The one-half of

the property that was conveyed to her by her husband during coverture could not be mortgaged by her without his joinder. Her conveyance by deed is prohibited by R. S., Chap. 63, Sec. 1, in these words: "Real estate directly conveyed to her by her husband cannot be conveyed by her without the joinder of her husband, except real estate conveyed to her as security or in payment of a bona fide debt actually due to her from her husband." And a conveyance by mortgage stands in the same category as a conveyance by deed, *Jewett* v. *Davis*, 10 Allen, 68. Otherwise that could be done indirectly by mortgage and foreclosure which could not be done directly by deed, and the purpose of the restriction in the statutes be completely thwarted. As to the one-half conveyed to her by her husband's brother, that was hers absolutely, subject to her husband's right to one-third by inheritance in case she should predecease him as she did. This one-third was not conveyed because he did not join in the mortgage.

The defendant, however, strongly urges that she is a bona fide purchaser for value; that at the time she loaned the money and took the mortgage, the records of the Court showed that the divorce had been decreed and therefore the wife had a right to convey absolutely. But the answer to this position is that the defendant was virtually a purchaser pendente lite, and with the risk that the decree so granted might subsequently be reversed. It is settled law that where an execution is extended upon land by levy and the land is subsequently sold by the execution creditor to a bona fide purchaser for value, and, later on, the judgment is vacated by writ of error, the purchaser will not be protected under a writ of entry because no title passed. *Mullin* v. *Atherton*, 61 N. H., 20; *Delano* v. *Wilde*, 11 Gray, 17. In *Bryant* v. *Fairfield*, 51 Maine, 149, this Court said: "If he (the execution creditor) elects to have it extended upon the lands of the debtor, his title will depend upon the validity of his judgment and must fail upon its reversal. Any one who purchases the land of him must run this risk; and there is no greater hardship in this than in any other case of failure of title. He may take care to be secured by the covenants in his deed; and if he distrusts the ability of the grantor he need not purchase."

The same reasoning and the same rule apply here. The decree of divorce was subject to reversal by the Court during the term at which it was entered, and whoever purchased land from the libelant

before the final adjournment took title with that potential defect. Reversal in the case of divorce proceedings should be followed by the same results as reversal of judgment after levy. This rule does not apply to execution sales at public auction, where for reasons of public policy purchasers at the sale are protected against a subsequent reversal of judgment. *Stinson* v. *Ross,* 51 Maine, 556. The distinction between levy and sale on execution is clearly recognized, and the case at bar falls in line with the former rather than the latter, because the conveyance was made by the party herself, and not by an officer of the Court at public auction. It is clear therefore that the plaintiff's rights remain unaffected by the mortgages given by his wife to the defendant, and those rights can be enforced at law by a writ of entry.

It should be added however that as a part of the proceeds of the loans made by the defendant and secured by these mortgages went to pay the prior mortgage for $300 held by Bickford in which, and in the note for which it was given as security, the plaintiff joined, and on which he was personally liable, the defendant should be subrogated to the rights of Bickford who received the amount due thereon and discharged the mortgage. Although discharged, equity will regard the Bickford mortgage as still subsisting and the defendant as the equitable assignee thereof. *Cobb* v. *Dyer,* 69 Maine, 494; *Fitcher* v. *Griffiths,* 216 Mass., 174. To this extent the defendant will be reimbursed, but the mortgage security for the balance of her loans to Mrs. Gato except the two-sixth interest acquired from the brother-in-law she must lose because of failure of title.

The pending bill asks simply for a permanent injunction. This alone would not furnish adequate relief nor fully work out the equitable rights of the parties. The bill therefore will be held in order that by proper amendments before a single Justice and the bringing in of all parties in interest, redemption of the property from both mortgages now held by the defendant may be obtained, under the principles laid down in this opinion.

The temporary injunction is continued, until the rights of the parties are finally determined.

*Decree accordingly.*