BOARD OF TRUSTEES OF FIRE-MEN'S RELIEF & PENSION FUND v. COTTON.

No. 35489. April 7, 1953.

Rehearing Denied May 5, 1953.

*256 P. 2d 802.*

Turner & Turner, Holdenville, for plaintiff in error.

Wells & Wells, Seminole, for defendant in error.

CORN, J. Plaintiff and R. L. Cotton were married in 1907. In 1910 they established their home in Holdenville, Oklahoma, where R. L. Cotton served more than 20 years as a member of the

city fire department. Upon retirement in May, 1942, his years of service entitled him to a pension of $87.50 per month, which amount he continued to drew until his death in December, 1949.

September 13, 1951, plaintiff sought a writ of mandamus requiring defendant to pay her, as surviving widow, there being no minor children, the sum of $58.33 per month from and after December 1, 1949. The petition alleged the facts of R. L. Cotton's pensioned retirement, death and her surviving widowhood; that defendant was the custodian of funds belonging to those entitled to receive same; following her husband's death she made claim to defendant for this pension which was refused; the filing of a further claim therefor (July 31, 1951), which defendant rejected and refused to pay to her as the surviving widow as required by applicable laws of this state.

September 20, 1951, the trial court entered an alternative writ of mandamus directing defendant to pay plaintiff all amounts due and to continue monthly payments in the amount claimed, or to appear and show cause for defendant's refusal to comply with such writ.

September 27, 1951, defendant filed answer admitting deceased's retirement and payment of pension until time of his death and that if plaintiff was the surviving widow that she would be entitled to receive 66 2/3% of deceased's pension. In defense defendant pleaded that for plaintiff to be eligible to receive such pension it was required that she and deceased had lived together as man and wife continuously for the five year period immediately preceding R. L. Cotton's retirement; that on October 10, 1940, R. L. Cotton secured a decree of divorce from plaintiff in Hughes county, Oklahoma, and under applicable statutes this made her ineligible to receive any portion of such pension. Further, that plaintiff had presented a claim therefor which was rejected after due consideration by the board on January 2, 1950; having failed

to exercise her statutory right of appeal from the board's action, same became final and not having availed herself of an adequate remedy provided by law, mandamus would not lie.

At the trial the records of the 1940 divorce proceedings were introduced, as was the testimony of the attorney who represented R. L. Cotton in such proceeding. A divorce was granted R. L. Cotton upon the ground of extreme cruelty, following the wife's (plaintiff's) entry of appearance and waiver of service of summons. Hearing upon plaintiff's action for mandamus further developed that in May, 1951, she filed petition to vacate the divorce upon the ground same had been procured through fraud and misrepresentation practiced upon the trial court. By amendment the board was made a party defendant to such petition, for the reason the money due from deceased's pension constituted a part of the property rights involved in the property settlement entered into between the parties, and approved by the trial court, upon granting of the decree of divorce. Defendant did not appear at the hearing on the petition to vacate the divorce decree. The trial court found that false allegations and recitations in such proceeding constituted fraud upon the trial court and the defendant (plaintiff herein); having been procured fraudulently such decree was void and an order was entered (July 30, 1951) setting same aside.

Upon trial of the present case defendant's motion to dismiss the action for mandamus was overruled, as was the motion to set aside the judgment vacating the divorce decree.

The evidence established the parties' marriage in 1907, and that they made their home in Holdenville from 1919 until deceased's retirement in 1942, and that they lived together as husband and wife during this period. In 1940 deceased had secured the above mentioned divorce. However, plaintiff testified that deceased returned home the day after the divorce was granted; the following day, they took a short trip

together outside the state, and at all times thereafter lived as husband and wife. There was further testimony by witnesses who lived as neighbors to plaintiff and her husband, or who had occasion to visit in their home with some regularity. These witnesses testified that they knew nothing of the divorce in 1940, and that deceased was at the home and the parties lived together at all times as man and wife, and nothing of a contrary nature ever was apparent to those who knew plaintiff and her husband. Following deceased's retirement in 1942 the parties moved from Holdenville to Henryetta, Oklahoma, where they purchased a home which they occupied until 1949. There was considerable evidence of marital discord during the period they resided in Henryetta.

Respecting plaintiff's making claim for the pension, it appears that after the husband's death, plaintiff verbally requested the mayor to investigate and see if the council would agree to allow payment thereof. Nothing came of this and plaintiff later directed inquiry to the city clerk (John Kirk), and also secretary of the pension board, and in this manner learned that the board did not intend to allow her claim.

The trial court found that plaintiff's pension claim was arbitrarily denied by the board without a claim having been filed, and without any transcript or record of any evidence being taken, and without notice to plaintiff that the board was to meet; that although the minutes of the board reflected unanimous rejection of her claim, such action was not binding upon plaintiff. The court further found that plaintiff filed claim for pension with the clerk of the pension board for all sums due and to become due, but the clerk refused to file such claim and have the board pass thereon, and failed to notify plaintiff that her claim was being ignored. It is sufficient to point out that such findings are entirely sustained by the evidence.

The trial court further found plaintiff and deceased were living together as husband and wife at the time of deceased's retirement, and had been living together continuously for more than 5 years immediately preceding his retirement, and not having remarried, plaintiff was and remained his widow. Based upon such findings the court entered a peremptory writ of mandamus requiring defendants to pay plaintiff $58.33 per month for every month since deceased's death, such payment to continue so long as plaintiff remained the unmarried widow of R. L. Cotton.

In seeking to reverse the judgment entered defendant presents an extended argument based upon three propositions. The gist of such argument is to the effect that the trial court attempted to accomplish by mandamus a result not otherwise possible, and therefore was without jurisdiction of the subject matter; that being a quasi-judicial body the board had the right to exercise its judicial discretion in determining plaintiff's eligibility for a pension and such determination was final except for being subject to review by the district court on appeal in the manner provided by statute; plaintiff failed to establish that she came within the statutory provisions entitling her to a widow's pension.

We are of the opinion that this appeal involves consideration of only two questions, which sufficiently dispose of the contentions urged on appeal. Naturally, the paramount question relates to the jurisdiction of the trial court to grant a writ of mandamus. It is urged by defendant that it is a quasi-judicial body, created by statute (11 O.S. 1951 §361, et seq.) and vested with discretionary powers. And that mandamus will not lie to control such judicial discretion, or issue where there is an adequate remedy at law. 12 O.S. 1951 §§ 1451-1452. The argument is that plaintiff was bound by the statutes regarding presentment of her claim and appeal from the board's decision to the extent that her failure to proceed according to statute prevented the district court from having jurisdiction in mandamus, although the board itself

was not bound to the extent that it was necessary to notify plaintiff her oral claim was to be heard, to take evidence of the proceedings, or to make a transcript of the proceedings upon which a proper appeal could be based. Defendant relies upon decisions of this court to the effect that upon appeal to the district court there is no right to trial de novo and the court's jurisdiction goes only to a review of the transcript of the proceedings and the evidence in order to ascertain whether there were errors of law, and whether the findings are supported by the evidence. See In re Gruber 89 Okla. 148, 214 P. 690; Firemen's Relief and Pension Board, of City of Holdenville, v. Lucas, 189 Okla. 328, 117 P. 2d 112. Under the circumstances outlined such decisions are inapplicable, although it is recognized that they are in accord with the general rule.

In 34 Am. Jur., Mandamus, §42, this rule is announced:

"Invented, as it was, for the purpose of supplying defects in justice, mandamus does not supersede legal remedies. To warrant the court in issuing the writ, it must appear that the complaining party has a clear legal right to the performance of the particular duty sought to be enforced and that he has no other plain, adequate, and complete method of redressing the wrong or of obtaining the relief to which he is entitled, so that without the aid of the writ, there would be a failure of justice.* * *"

And in section 126, the following rule is announced:

"* * *Before appealing to the courts for mandamus, it may be necessary to seek a hearing before the board or commission against which the writ is sought, unless it is apparent from the facts and circumstances that any recourse to such board or commission would be unavailing.***"

This rule has been applied in our prior decisions, wherein we have recognized that a writ of mandamus may be issued to correct an abuse of discretion, or to compel some action where there has been an erroneous refusal to

act, or where the action taken is erroneous or arbitrary. Consideration of the granting of this relief is subject to the trial court's legal and equitable discretion. See State ex rel. H. F. Wilcox Oil & Gas Co. v. Walker, 168 Okla. 543, 35 P. 2d 269; Board of County Com'rs of Carter County v. Dorough, 177 Okla. 346, 59 P. 2d 273; Marland, Gov., v. Hoffman, 184 Okla. 591, 89 P. 2d 287.

The trial court found defendant's actions as respected plaintiff's pension claim constituted an arbitrary and erroneous abuse of discretion. We are of the opinion that upon the showing made the trial court had jurisdiction to entertain plaintiff's application for writ of mandamus.

The second point of inquiry concerns defendant's contention plaintiff failed to come within the provisions of the statute upon which the pension claim was based. A surviving widow's right to receive a part (66 2/3%) of a deceased husband's pension is fixed by 11 O.S. 1951 §368a. The final proviso of this statute is as follows:

"* * *Provided, further, that in order for a widow to qualify for said pension she must have been married to and living with the pensioner as his wife at the time of his retirement and at least five (5) continuous years prior thereto."

Defendant points out that these parties were divorced within the five-year period mentioned in the statute, the decree having remained in effect until set aside in 1951, upon plaintiff's petition. Further, deceased left his home and supposedly married another woman in 1943, but divorced this party and returned home; whereupon plaintiff and deceased underwent another ceremonial marriage in 1944, and were subsequently divorced, but again continued living together as husband and wife up to the time of deceased's death. Defendant urges that these facts conclusively establish plaintiff's ineligibility to a pension under the above statutory provisions, and further show plaintiff was not a surviving widow.

This record reveals a series of marital transgressions by deceased of varying duration. Each episode culminated in reconciliation with plaintiff and a return to the family home, which plaintiff apparently kept open as a haven where deceased always returned when his wanderings ended. A history of their marital status discloses a divorce on October 10, 1940, and deceased's return home the following day. Following his retirement in 1942 the parties established a home in Henryetta. In the latter part of 1943 deceased "took up" with a woman in a neighboring city, but in January, 1944, he returned home, advising plaintiff he had been divorced. Nothing in the record establishes a marriage during the three months he consorted with this woman, nor is there evidence of a divorce, other than deceased's advice to plaintiff that he had been divorced. At plaintiff's instigation, being dissatisfied with the appearance of deceased leaving and then being able to return at will to the family home as a husband, the parties underwent another marriage ceremony in June, 1944, at Durant, Oklahoma. In October, 1944, he besought plaintiff to give him a divorce because another woman was "threatening to ruin him." However, during pendency of this proceeding the other woman relented in her claim to his affections and disappeared without further ado. During all this time these parties lived together as husband and wife, the relation continuing uninterruptedly until deceased's death in 1949.

It is unnecessary to consider whether the divorce decree (1940) so broke the chain of marriage relationship as to destroy plaintiff's pension eligibility under the statute, supra, even though the parties in truth and fact continued the marriage relationship. The trial court vacated such decree upon the grounds of fraud in the procurement thereof, which materially prejudiced plaintiff's property right.

The rule applicable in such situations is found in 17 Am. Jur., Divorce and Separation, §462, which states:

"According to the generally prevailing view, a judgment or decree of divorce does not affect property rights. Proceedings to vacate it will not lie after the death of one of the parties. The only object which could be attained would be sentimental in its nature, for the death of the parties effectually severs the marriage relation and the practical result of the judgment or decree would not be affected. On the other hand, where the judgment or decree affects property rights, the death of one party or both parties does not affect the right of the unsuccessful party or his or her representatives to institute vacation proceedings. This is permitted, not for the purpose of continuing the controversy touching right to a divorce itself, but for the ascertainment of whether the property has been rightly diverted from its appropriate channel of devolution. This rule has been held to apply where the divorce was procured at the instance of a husband and except for it, the wife would be entitled to a Federal pension from the time of his death. The action is deemed to involve only property rights, and the state is no longer interested. ***"

The rule in this jurisdiction is that courts of equity have the inherent power to relieve against judgments which are procured by fraud. See Kauffman v. McLaughlin, 189 Okla. 194, 114 P. 2d 929. Such relief may be had by direct suit in equity. Red Eagle v. Cannon, 198 Okla. 330, 177 P. 2d 841. The exact application of the rule permitting vacation of a divorce decree which deprived the wife of a pension following the husband's death may be observed in Lawrence v. Nelson, 113 Iowa 277, 85 N.W. 84, 57 L.R.A. 583. Also see Scheihing v. Baltimore & O. Ry. Co., 180 Md. 168, 23 A. 2d 381, limiting the right of attack by the surviving spouse to property rights alone. Bussey v. Bussey. 94 N.H. 328, 52 A. 2d 856, to the same effect; Rimbow v. Rimbow (Tex. Civ. App.) 191 S.W. 2d 89, presenting an extensive review of authorities. In this case the Texas court applied the rule permitting vacation of a divorce decree procured by fraud by the first wife, where property rights were involved, as

against a second wife. Recognition of this principle by our own court may be observed in the early cases of Rodgers v. Nichols, 15 Okla. 579, 83 P. 923; Clay v. Robertson, 30 Okla. 758, 120 P. 1102; LeClair v. Calls Him, 106 Okla. 247, 233 P. 1087. We are of the opinion the trial court properly vacated the divorce decree entered in 1940. With this in mind there is no merit to the contention that such decree severed the parties' marital relation so as to destroy plaintiff's eligibility to receive the statutory pension provided under section 386a, supra.

As concerns defendant's remaining argument. the record sufficiently supports the trial court's finding that plaintiff was the surviving widow of R. L. Cotton. This evidence is overwhelmingly to the effect that the parties maintained their marital relationship over the years. In the absence of better evidence, deceased's conflicting declarations at various times concerning his marital status cannot overcome the fact of these parties' marriage and continuous maintenance of the relationship of husband and wife. The trial court correctly concluded that plaintiff was the surviving widow of R. L. Cotton, and as such was entitled to the statutory allowance from the defendant's pension funds. ·

Judgment affirmed.