**Sally Kobin UNGER, Appellant,**

v.

**Estelle UNGER, Appellee.**

**No. 2812.**

Municipal Court of Appeals for the District of Columbia.

Submitted July 31, 1961.

Decided Oct. 10, 1961.
Rehearing Denied Oct. 26, 1961.

Richard L. Merrick, Washington, D. C., for appellant.

James C. Gregg, Washington, D. C., for appellee.

Before HOOD and QUINN, Associate Judges, and SMITH, Chief Judge of The Municipal Court for the District of Columbia, sitting by designation.

HOOD, Associate Judge.

In this action appellant sought to set aside a divorce decree which had been granted to her former husband, Morris Unger, who is now deceased, and to be adjudged his lawful widow. Named as de-

fendant was appellee who married Morris Unger after his divorce from appellant. On the basis of the pleadings, depositions of the parties and the record in the divorce action, the trial court dismissed the action; and this appeal was brought.

Appellant and Morris Unger were married in Brooklyn, New York, in 1923. While still living with appellant, Unger in 1939 participated in a bigamous marriage ceremony in Greenwich, Connecticut, with appellee. In 1942 Unger came to the District of Columbia to seek employment and, upon obtaining a job, sent for appellee. From that time until 1954 Unger and appellee maintained a marital relationship. Between the time of the second marriage in 1939 and 1942, when Unger came to the District, he apparently lived with both women at different times during the week, each believing that his employment precluded him from spending the entire week at home. From 1942 through 1948, while living in the District with appellee, Unger made frequent trips to New York and during these visits resumed marital relations with appellant. These visits ceased in 1948 due to Unger's illness.

Apparently for a time after 1948 Unger continued sending support money to appellant. When these payments ceased appellant engaged an investigator to learn of Unger's whereabouts and circumstances. When through this investigation she learned that Unger was living in Maryland with another woman, appellant brought suit in 1954 against him there for support. Both appellant and appellee testified that they were unaware of each other until this time. It was when the Maryland suit was brought that appellee first learned that Unger had not been divorced from appellant. She immediately discontinued the marital relationship. Subsequently in 1957, Unger filed suit for divorce in the District of Columbia against appellant on the ground

of five years' voluntary separation. At trial, in which appellant made a personal appearance, Unger was awarded a divorce. Unger and appellee entered into a second marriage in 1958 and in 1959 he died.

Although the record reveals that appellant had knowledge that Unger was living with another woman after 1954, appellant testified that she did not know that Unger had married appellee, and in fact did not learn of that marriage until after his death.

 It is generally held that a divorce decree procured by fraud may be set aside after the death of the successful party when property rights are involved.[1] Although the complaint here did not refer to any specific property rights, it did ask that appellant be adjudged the lawful widow of Morris Unger "and as such to be entitled to all the lawful rights and interests arising from or growing out of the marriage relation." We feel the complaint may be reasonably construed as one brought because of some property rights or interests.

We are thus brought to the question whether the complaint alleged the type of fraud which, if proved, would warrant setting aside the judgment of divorce.

 The claimed fraud is Unger's failure to reveal during the divorce proceedings that he had entered into the bigamous marriage with appellee. This fraud, if such it be, would not be grounds for vacating the divorce decree. In the first place, although appellant says she was not aware of the bigamous marriage at the time of the divorce proceedings, she admits knowing at that time of some relationship existing between Unger and appellee, and yet she made no attempt to inquire into or develop the exact nature of the relationship. In the second place, perjured testimony during the course of a trial does not constitute the type of fraud necessary to

1. Lucas v. Lucas, 252 Ala. 626, 42 So.2d 457; Croyle v. Croyle, 184 Md. 126, 40 A.2d 374; Scheihing v. Baltimore & O. R. R. Co., 180 Md. 168, 23 A.2d 381; 17 Am.Jur., Divorce and Separation, § 520; 27A C.J.S. Divorce § 171.

set aside a judgment;[2] and Unger's failure to voluntarily reveal his bigamous marriage to the court is less than perjury. In the third place, even if Unger's illicit relationship with appellee had been disclosed during the divorce proceedings, it would not have materially affected the result, for recrimination would not have been a defense to his claim to a divorce on the ground of five years' voluntary separation.[3]

Affirmed.

2. United States v. Throckmorton, 98 U.S. 61, 25 L.Ed. 93; Dowdy v. Hawfield, 88 U.S.App.D.C. 241, 189 F.2d 637, certiorari denied 342 U.S. 830, 72 S.Ct. 54, 96 L.Ed. 628; Atchison, T. & S. F. Ry. Co. v. United States, 8 Cir., 106 F.2d 899.

3. Buford v. Buford, 81 U.S.App.D.C. 169, 156 F.2d 567; Vanderhuff v. Vanderhuff, 79 U.S.App.D.C. 153, 144 F.2d 509.