Early Lee **ANDERSON**, Plaintiff-Appellant,

v.

Rose B. **DYER** and Rose B. Dyer, guardian of Elizabeth J. Dyer, a minor, Defendants-Respondents,

and

Annie Anderson, Defendant.

No. 8989.

Springfield Court of Appeals, Missouri.

June 26, 1970.

Motion for Rehearing or to Transfer to Supreme Court Denied July 21, 1970.

809

J. W. Grossenheider, Lebanon, for plaintiff-appellant.

Arthur B. Cohn, Waynesville, for defendants-respondents.

TITUS, Presiding Judge.

Oliver Anderson was awarded a default divorce from Early Lee Anderson by the Circuit Court of Pulaski County on June 23, 1958. Ten years and almost eight months thereafter, or on February 19, 1969, Early Lee filed this action to set aside the divorce for fraud. Following trial, Early Lee's petition was dismissed for the stated reason that her action was barred by the statute of limitations. The trial court eschewed the "[o]ther affirmative defenses * * * filed by the answering defendants [because they were] academic in view of the governing effect of Section 516.120 (5)."[1] Early Lee appealed and contends, inter alia, her suit was not barred since "the cause of action did not arise until [her] discovery of the fraud * * * and the action was commenced within five years after discovery." She also asserts the trial court erred when it "chose to disregard Section 516.280."

Oliver expired before institution of this action and, from the scant record on the subject, we deduce that death overtook him subsequent to 1966 and prior to October 1968. We are not informed of the location of Oliver's residence at the time he died nor the place where death occurred; likewise, there is no suggestion, either by pleading or proof, that a personal representative was ever appointed for the decedent or that any effort had been made to administer his estate. Neither did Early Lee specifically plead or prove why she deemed it necessary that the divorce be set aside in face of the indisputable fact that Oliver's demise served to dissolve the marriage in any event, and she did not directly indicate that an annulment of the divorce would endow her with any rights or property interests. Defendants named in the cause were Annie Anderson (the now adult daughter born of the marriage of Oliver and Early Lee) and Rose B. Dyer (Oliver's mother), who was sued individually and as the guardian of Oliver's alleged minor illegitimate child. Annie did not plead.

■ Early Lee's petition averred that in the divorce action Oliver had "fraudulently executed an affidavit for service by publication [wherein he stated the "Present Known Address" of Early Lee was "unknown"] and fraudulently obtained said divorce based upon service by publication [because] he at all times * * * knew the exact location of [Early Lee] and fraudulently and willfully kept her from knowing that he had instituted a divorce action against her and was about to obtain a decree of divorce." The petition further asserted that "immediately upon learning of this purported decree [Early Lee] made arrangements for the institution of this action." Mrs. Dyer's motion to dismiss the petition because it did not state a cause of action and was barred by limitations was overruled. She then filed an answer which denied the material allegations of the petition and affirmatively pleaded that the case was barred by the statute of limitations, that defendants were improper parties and that the petition did not state a claim upon which relief could be granted. No reply was made to the answer and it is to be noted that Early Lee did not plead any exceptions relieving her from the statute of limitations [Ludwig v. Scott, Mo., 65 S.W.2d 1034, 1035(3)], i. e., Early Lee did not allege when she first learned of the purported fraud or why she did not make discovery sooner, and there is no averment as to what Oliver may have done that prevented her from learning of the divorce before she did. Foster v. Petree, 347 Mo. 992, 994(3), 149 S.W.2d 851, 853(4); Siler v. Kessinger, Mo.App., 149 S.W.2d 890, 892(1). However, no objection was made that any of the evidence (all offered by Early Lee) went to prove an unpleaded exception to the statute, so, after judgment, the petition will be treated as having been amended to include the exceptions shown by the proof. V.A.M.R. Rule 55.54, V.A.M.S. § 509.500; Greene v. Morse, Mo.App., 375 S.W.2d 411, 418(11).

---

1. Unless otherwise stated, statutory references herein are to RSMo 1959, V.A.M.S.

The evidence consisted of the deposition testimony of Early Lee and her daughter, Annie, and exhibits anent the divorce proceedings and decree. Mrs. Dyer's counsel objected to the testimony on the ground that it violated the "dead man's statute" (Sec. 491.010), but we need not consider the objection for the purposes of this appeal. The testimony reveals that Oliver was a member of the Army during the times concerned and that Early Lee and Annie had resided continuously in the same apartment in Jamaica, New York, from August 1956 until they deposed in May 1969. In substance and intendment, the testimony was that Oliver, both before the June 23, 1958, divorce and thereafter until 1966, had visited with and written to Early Lee at the apartment and was, therefore, fully cognizant of her whereabouts and mailing address during that period. Early Lee and Annie further related that Oliver's correspondence and personal visitations continued after the divorce and that he at no time, by word or conduct, made them aware the marriage had terminated. They additionally stated no knowledge of the divorce came to them until "October, 1968," which was after Oliver had died.

The statutes with which we are principally concerned are:

Sec. 516.100—"Civil actions, * * * can only be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued; * * *."

Sec. 516.120—"Within five years: * * * (5) An action for relief on the ground of fraud, the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud." [2]

Sec. 516.280—"If any person, by absconding or concealing himself, or by any other improper act, prevent the commencement of an action, such action may be commenced within the time herein limited, after the commencement of such action shall have ceased to be so prevented."

 Although the bipartition of Sec. 516.120(5) has not been recognized in the reported cases, the uniqueness of the composition of this section may not be properly ignored. The initial segment of Sec. 516.-120(5) is simply a statute of limitations which imposes a five year limit on the commencement of actions brought for relief on the ground of fraud; the concluding portion constitutes a ten-year artificial lacuna fixed by the legislature on the accrual of the cause of action, i. e., fraud actions are deemed not to accrue during the ten-year suspension period until the discovery of the fraud. As a general rule, a cause of action accrues the moment the right to commence the action comes into existence and the statute of limitations starts to run from that time.[3] In the instant matter, Early Lee's right to set aside the divorce for fraud actually accrued when the decree was entered on June 23, 1958. However, for the purpose of determining when the five year statute of limitations would commence to run, the last part of Sec. 516.120(5) artificially deferred the accrual of Early Lee's cause of action until she discovered the fraud at any time within ten years of its perpetration.[4] If the fraud was not discovered or discoverable during the ten-year hiatus provided by the legislature, then the cause of action would be deemed

2. Sec. 516.120(5) fixes the limitations imposed upon the right to set aside a judgment on the ground of fraud. Fitzpatrick v. Stevens, 114 Mo.App. 497, 503(4), 89 S.W. 897, 899(4).

3. Sec. 516.100; Rippe v. Sutter, Mo., 292 S.W.2d 86, 90(10); Kohout v. Adler, Mo.App., 327 S.W.2d 492, 494-495; Cf. Chemical Workers Basic Union v. Arnold Sav. Bank, Mo. (banc), 411 S.W.2d 159, 164.

4. Johnson v. United Rys. Co. of St. Louis, 243 Mo. 278, 297, 147 S.W. 1077, 1081; Picot v. Bates, 39 Mo. 292, 302; Briece v. Bosso, Mo.App., 158 S.W.2d 463, 464; Heisler v. Clymer, 179 Mo.App. 110, 161 S.W. 337, 341; Kaufman v. C.R.A., Inc. W.D.Mo., 243 F.Supp. 721, 722, 726.

to have accrued at the termination of such period and the statute of limitations would commence to run from that time, thereby permitting a maximum of fifteen years for commencement of the suit. Gromacki v. Armour & Co., W.D.Mo., 76 F.Supp. 752, 754(3). In other words, "the action is to be brought within fifteen years in any event and if the fraud be discovered [or is discoverable] prior to the lapse of ten years, then within five years after its discovery." Foster v. Pettijohn, 358 Mo. 84, 88, 213 S.W. 2d 487, 490.

To better understand Sec. 516.120(5) and its relation to other limitation sections and accrual principles, we are authorized to resort to history. Gross v. Merchants-Produce Bank, Mo.App., 390 S.W.2d 591, 594(4). The limitation act passed by the General Assembly in 1835 (RSMo 1835, pp. 392–396) "set the pattern for our present statutory scheme." Kauchick v. Williams, Mo. (banc), 435 S.W.2d 342, 346. Save for a few superfluous words now deleted, art. III, § 8, p. 396, of the 1835 enactment was in the language of present Sec. 516.280, supra, but, interestingly enough, the act contained no mention of "an action for relief on the ground of fraud." This void was partially filled by the Laws of 1849, p. 74, when art. II, § 4, was amended to read: "Within five years: * * * Sixth, an action for relief on the ground of fraud —the cause of action in such case to be deemed not to have accrued until the discovery by the aggrieved party of the facts constituting the fraud." Especial note should be made that the phrase "at any time within ten years," as contained in Sec. 516.120(5), was missing from the 1849 section. In commenting on this particular addition (which continued in the same form through the Laws of 1857, p. 78), our Supreme Court said in Hunter v. Hunter, 50 Mo. 445, 452, that "[w]here the case is one of fraud, the statute in no case will commence to run till the discovery of the fraud. This was always the equity doctrine, and is still the doctrine under our code." Thus at this stage of the legislation, it mattered little whether reliance was made on the sixth clause of the 1849 amendment, upon the equity doctrine or on the other "improper act"[5] in what is now Sec. 516.280, for the cause of action did not accrue or, stated otherwise, the limitation did not begin to run until the fraud was discovered. Consequently, the net effect of the 1849 act was to bar actions brought for relief on the ground of fraud five years after their discovery with no limitation placed upon the time within which the fraud had to be discovered. Thereafter, we find by the General Statutes of 1866 (Ch. 191, § 10, p. 747) that the law had been further amended by adding "at any time within ten years" to that portion of the section governing the accrual of fraud actions to make the section read as our present Sec. 516.120(5). This change served to modify the previous code provisions and equitable exceptions which specified no time limit on the discovery of the fraud, and fixed for the commencement of such actions "a limit of five years after the discovery at any time within ten years of the facts constituting the fraud." Rogers v. Brown, 61 Mo. 187, 192.

■ We proceed on the assumption that when the legislature amended the limitation act as reflected by the 1866 General Statutes, it knew of the existence of what are now Secs. 516.100 and 516.280 and what was then the sixth clause of § 4 of the Laws of 1849. City of Nevada v. Bastow, Mo.App., 328 S.W.2d 45, 49(5). Also, the General Assembly must be presumed to have been aware that no limit then existed upon the time for the discovery of fraud [Mack Motor Truck Corporation v. Wolfe, Mo.App., 303 S.W.2d 697, 700–701(4)], that it intended to change the existing law [State ex rel. M. J. Gorzik Corp. v. Mosman, Mo., 315 S.W.2d 209, 211(2)] by adding the phrase "at any time within ten years" to the statute [Garrard v. State

---

5. Provided it was in the nature of a fraud—Davis v. Carp, 258 Mo. 686, 698(2), 167 S.W. 1042, 1046(3).

Dept. of Public Health and Welfare, Mo. App., 375 S.W.2d 582, 589(13)], and that it did not undertake thereby to do a needless or useless thing. Wright v. J. A. Tobin Const. Co., Mo.App., 365 S.W.2d 742, 744 (4). While we appreciate the distinction sometimes made between statutes of limitations found in the general chapter and those in separate sections, and the affinity attributed to statutes reposing in a single chapter of the laws (Kauchick v. Williams, supra, 435 S.W.2d at 346–347), we nevertheless heed the admonition that the provisions of a statute having special application to a particular subject should be deemed a qualification to another statute on the same subject which is stated in general terms. Flarsheim v. Twenty Five Thirty Two Broadway Corp., Mo., 432 S.W.2d 245, 251(5); State ex rel. Baker v. Goodman, 364 Mo. (banc) 1202, 1212, 274 S.W.2d 293, 297(4).

The Missouri Supreme Court recently held in Smile v. Lawson, Mo. (banc), 435 S.W.2d 325, 327(1), that fraudulent concealment of a cause of action is an "improper act" within the meaning of Sec. 516.280 which, if established, will toll the running of limitations with respect to actions for malpractice. Sec. 516.140. It is to be seen, however, that the sections limiting malpractice and other actions enumerated in the general limitation statutes contained in Chapter 516, do not deal specially and specifically with the accrual of the cause of action in fraud cases as is the situation in Sec. 516.120(5), which we see as a statute having special application to a particular subject. If this was conceded, arguendo, to be a case where fraudulent concealment of the cause of action was established, and if the provision in Sec. 516.120(5) limiting the discovery of fraud to ten years for accrual purposes be not effective over the provisions of Sec. 516.-280, there would be no limit on the time for discovering the fraud and the legislature would have done a useless thing by changing the law as evidenced by the General Statutes of 1866. The imposition of Sec. 516.280 onto Sec. 516.120(5) would make the latter ineffective insofar as it undertakes to establish a particular period within which the fraud is deemed to have been discovered and the action to have accrued. Therefore, "[i]f the action is founded upon fraud, as provided in [Sec. 516.120(5)], * * * it does not matter whether the party who has defrauded him does anything to prevent his discovery or not." Maynard v. Doe Run Lead Co., 305 Mo. 356, 375, 265 S.W. 94, 99.

Assuming that we comprehend respondent's counsel and the trial court aright (and this is the apparent reason for the ado made by Early Lee over Sec. 516.280), they concluded that since Early Lee did not discover the averred fraud until October 1968 (ten years and three months after it occurred), her action was barred albeit was commenced within fifteen years of the date the fraud (divorce) was allegedly perpetrated. We do not understand that Sec. 516.120(5) so provides. In light of the background and history of Sec. 516.120(5), and led by the authorities heretofore cited, it is our opinion that the cause of action for relief on the ground of fraud accrues whenever the fraud is actually discovered or discoverable at any time within ten years but if discovery is not made within ten years of the fact constituting the fraud, then the cause of action is deemed, nevertheless, to have accrued upon the termination of that period and the aggrieved party has five years from the actual or deemed accrual date (whichever occurs sooner) in which to commence his suit. If this was not so, an aggrived party who discovers the fraud one day short of ten years after its perpetration would have five years thereafter to file his suit, whereas if he did not learn of the fraud until one day beyond the ten years his action would be barred although it be filed within the same period afforded in the first instance. In any event, it is our view that if it be established that Early Lee did not know of the fraud and, by the exercise of requisite care and due diligence, could not have discovered the purported

fraud at any time within ten years of its occurrence, her cause of action to set aside the divorce for fraud was deemed to have accrued ten years after entry of the decree and that regardless of the fact actual discovery occurred after the action was deemed to have accrued, she still had a total of fifteen years after the divorce within which to commence her suit. Foster v. Pettijohn, supra, 213 S.W.2d at 490. The trial court, therefore, erred in dismissing Early Lee's petition for the reason stated and the other affirmative defenses pleaded were not academic in the case.

■■ A court of equity may vacate a divorce decree for extrinsic fraud in the procurement of the judgment notwithstanding the prevailing party has died. Hemphill v. Quigg, Mo., 355 S.W.2d 57, 62–63(5). However, because it is said that the law does nothing in vain (nil frustra agit lex), courts will not entertain a post mortem inquiry into the validity of a divorce to simply satisfy a sentiment (Lawrence v. Nelson, 113 Iowa 277, 85 N.W. 84) or to merely determine the validity vel non of a judgment which fixed an unmarried status earlier than death subsequently established forever. Richmond v. Richmond, Mo.App., 225 S.W. 126, 127(1). Ergo, unless setting aside the divorce affects or will determine property rights, the action may not be maintained after death [6] and an appeal taken or pending subsequent to death will abate.[7]

It was previously observed that Early Lee did not plead or prove that annulment of the divorce decree would invest her with any particular rights or property because of Oliver's death. Nevertheless, the evidence did reveal that Oliver, at least from 1958 to 1966, was in the U. S. Army and, as we judicially notice the acts of Congress,[8] we must be aware of the probability that his widow might be entitled to some financial benefits upon his death. "Rights of a widow to veteran's and social security benefits under applicable laws are rights of property entitling the widow to have set aside a purported decree of divorce which was obtained by fraud on the part of the deceased husband." Lindley v. Lindley, 274 Ala. 570, 150 So.2d 746, 750 (1).

■ Although the trial court's reason for dismissing plaintiff's petition was wrong, we are mindful that the judgment is not to be disturbed on appeal if it was for the right parties. O'Donnell v. Chase Hotel, Inc., Mo.App., 388 S.W.2d 489, 491 (1). In view of the evidence actually adduced, it would appear at first blush that Oliver's death rendered "moot" Early Lee's quest for annulment of the divorce decree [State ex rel. Weber v. Vossbrink, Mo. App., 333 S.W.2d 298, 301(1, 2)], and for that reason judgment was for the proper parties even though the trial court's assignment therefor was in error. However, the record indicates that if Early Lee be given

6. Unger v. Unger, D.C.Mun.App., 174 A.2d 84, 85(1); Lucas v. Lucas, 252 Ala. 626, 42 So.2d 457, 458(2); Stitt v. Sunderman, 247 Iowa 1132, 77 N.W.2d 629, 631(1); Higgins v. Higgins, 204 Iowa 1312, 216 N.W. 693, 694(2); Gato v. Christian, 112 Me. 427, 92 A. 489, 490–491(1); Scheihing v. Baltimore & O. R. R., 180 Md. 168, 23 A.2d 381, 383(4); Croyle v. Croyle, 184 Md. 126, 40 A.2d 374, 379(6); Board of Trustees of Firemen's Relief & Pension Fund v. Cotton, 208 Okl. 421, 256 P.2d 802, 806(3); Cook v. Cook, 167 Or. 474, 111 P.2d 840, 841(1); Weaver v. Garrietty, Tex.Civ. App., 84 S.W.2d 878, 880–881(2).

7. Caddell v. Caddell, 204 Mo.App. 182, 183, 222 S.W. 873(1); Sperry v. Sperry, Mo.App., 72 S.W. 1077; Rimbow v. Rimbow, Tex.Civ.App., 191 S.W.2d 89, 91(4); Owen v. Owen, 208 Ark. 23, 184 S.W.2d 808(1); Bradshaw v. Sullivan, 160 Ark. 547, 254 S.W. 1064, 1065(3); Busch v. Busch, Fla., 62 So.2d 68, 69(1); Graham v. Graham, 227 Iowa 223, 288 N.W. 78, 80(1).

8. Secs. 490.080 and 490.090; Rositzky v. Rositzky, 329 Mo. 662, 679, 46 S.W.2d 591, 599(19); Redman v. Western & Southern Life Ins. Co., Mo.App., 187 S. W.2d 842, 847(5).

the opportunity to produce additional evidence which the record suggests is available, practical relief can follow a judicial determination of the controversy provided, of course, Early Lee properly pleads her cause and can succeed in establishing all of the necessary elements of her case. Had the judgment nisi been for Early Lee, the same reasoning which would prompt us to reverse and remand this cause for a new trial because of trial court error suggests that we should award a new trial in this case for it is evident that neither the plaintiff [Green v. Ralston Purina Company, Mo., 376 S.W.2d 119, 128(15); Lance v. Van Winkle, 358 Mo. 143, 151, 213 S.W.2d 401, 404–405(10)] nor the defendants [Midwestern Machinery Company v. Parsons, Mo.App., 385 S.W.2d 224, 228–229(13)] have presented all the available evidence to establish the claim or the defenses thereto. This is in keeping with the general rule that when there are issues in a case that have not been determined in the trial court, an appellate court will usually order a new trial after reversal. Radford v. Radford, Mo., 388 S.W.2d 33, 40(12); Blaser v. Coleman, 358 Mo. (banc) 157, 163, 213 S.W.2d 420, 423 (9); 5B C.J.S. Appeal & Error § 1942, pp. 494–498. Nevertheless, we sound this caveat for the benefit of the trial judge and counsel: nothing we have said is to be considered as a suggestion as to how the issues and defenses should be decided—the determination of these matters is a task to be executed by the court nisi upon whatever the pleadings and evidence may be at the new trial.

For the reasons stated, the judgment is reversed and the cause is remanded for a new trial.

STONE and HOGAN, JJ., concur.