GREAT SOUTHERN LUMBER CO. v. NEWSOM BROS.

[91 South. 864. No. 22598.]

1. LOGS AND LOGGING. *Trees three to eight inches in diameter having a market price held included in a deed conveying "merchantable timber."*

Where the testimony shows that, at the time the plaintiff purchased the merchantable timber on a sixteenth section of land. pine trees from three to eight inches in diameter were sold in that locality to paper mills to be manufactured into paper and that there was a market price for timber of that kind, for that purpose, then this small timber was merchantable timber and plaintiff by his deed obtained the title to it.

2. LOGS AND LOGGING. *"Merchantable timber" is such as is used for building and manufacture and has a market price in the vicinity.*

"Merchantable timber" is such timber as is used for building purposes or in the manufacture or construction of useful articles and has a market price, is generally sold in the market in that vicinity.

3. LOGS AND LOGGING. *The word "merchantable" in deed of marketable timber is not limited to sawmill timber, but to such as is in general demand and has a market for commercial purposes; "merchantable pine timber."*

*Held*, that the following instruction in this case is correct: "The
court instructs the jury for the plaintiffs that the word 'mer-
chantable' means anything that is marketable, sound, and un-
damaged for the purpose for which such article is to be used,
and for which there is a general demand on the open market in
the territory where such article is kept for sale or found. The
court further instructs the jury that 'merchantable pine timber'
does not necessarily mean only such timber as can be used for saw-
mill purposes, but it means any kind of pine timber for which
there is a general demand and market for commercial purposes
in the territory where such pine timber is."

APPEAL from circuit court of Marion county.

HON. G. WOOD MAGEE, Special Judge.

Suit by Newsom Bros. against the Great Southern Lum-
ber Company. Judgment for plaintiffs, and defendant ap-
peals. Affirmed.

*Mounger, Ford & Mounger,* for appellant.

Interpreting the meaning of this deed, and in seeking a
definition of the word "timber" as therein used, resort may
be had to general authorities. The authorities are very
numerous but we do not find much conflict in them. Tim-
ber is defined to be trees useful for building and construc-
tion purposes. Webster defines timber as: "That sort of
wood which is proper for building." 43 Tex. 347. In *Nash*
v. *Driscoe,* 51 Me. 417, the following language is used:
"The signification given to the word 'timber' by the court
was correct. The words from which it was derived and in-
corporated into the English language all relate to
the erection or construction of buildings or chattels.
Webster defines it as "that sort of wood which is proper
for building." . . . Firewood or what is sometimes
called 'cordwood' cannot properly be said to be construct-
ed or manufactured. The materials of which it is com-
posed are not called timber, though timber might be used
for that purpose. In a contract for the purchase of tim-
ber, the purchaser acquired no title to trees not suitable

for any purpose but for firewood. The construction of a written contract involving the meaning of the words therein is not a question of fact, but one of law." *Qimmerman Mfg. Company* v. *Wilson* (Ala.), 80 So. 422; *Alcutt* v. *Lakin*, 66 Am. Dec. 739; *Donworth* v. *Sawyer*, 94 Me. 443, citing Century Dictionary, 17 R. C. L. at page 1066; *Balderson* v. *Seeley*, 160 Mich. 186, 136 Am. St. Rep. 428.

Instruction No. 3 granted for the plaintiffs. By this instruction the court told the jury that "merchantable pine timber" does not necessarily mean only such timber as can be used for sawlog purposes, but it means any kind of timber for which there is a general demand and market for commercial purposes in the territory where such pine timber may be. This instruction made the test of its being timber the fact of there being a general demand and market for commercial purposes. This was erroneous. There may be a general demand and market for wood to be manufactured out of trees. This instruction gave the jury to understand that if the timber was salable, that it was merchantable timber. Salability would make it merchantable, but salability would not make it timber If it was salable only as wood, it would still be merchantable, but not timber. The question was whether the subject-matter of the alleged contract, that is to say, the wood which could be manufactured out of the little second growth, old field pines was "timber" or was "wood," and the court's instruction on that point was erroneous and misleading. This instruction should be considered in connection with instruction No. 5, which was requested on behalf of the appellant, and which the court refused to grant. We submit that the latter instruction, the one which the court refused to give, contained a correct definition of the words "merchantable timber." By this instruction the court was asked to instruct the jury in the following terms: "Timber consists of trees or bodies of trees either standing or lying which are suitable for building or construction purposes, or young trees, which after further growth, may become so, and merchantable timber consists

of such trees or bodies of trees as are presently salable for use in building or for construction purposes without further growth."

If the jury had been given the benefit of this instruction, they would have had a means by which to determine whether the wood which the appellees were·claiming that the appellant should have permitted them to load and should have purchased from them, was obtainable from merchantable timber, which the appellees had a right to cut from the sixteenth-section lands in question.. We submit, therefore, that the court erred both in granting instruction No. 3, which the court did grant on behalf of the plaintiffs, and erred also in refusing to grant instruction No..5, which was requested on behalf of the defendant, and which the court refused to grant.

Instruction No. 2, Granted for Plaintiffs.
(R. P. 332.)

By this instruction the court told the jury that if they found for the plaintiff they must assess damages to compensate him for the profits which the plaintiff would have made on the pulp wood on the lands, had the defendant permitted the plaintiff to complete his contract. This instruction entirely disregarded the question of the plaintiff's title and treated the matter as if the title to the wood was settled, and the instruction entirely disregarded whether the wood might be made from tops or from small trees, and disregarded the question whether the plaintiff had the title to all or only a part of the wood upon this land. It was in evidence that, and it is not disputed, the pulp wood made from the bodies of small sap pines was more valuable than that made from the tops of trees. Wood made from small sap pines was worth five dollars per cord. The appellees brought their suit claiming that they contracted to deliver all the pulp wood, but in their declaration they did not mention the wood to be manufactured from tops, but they did mention and declare that the contract had reference to the wood to be manufactured out of the small growth of sap pines. The appellees, the plaintiffs, in the

court below, did not have any right to claim that they could perform the cc 'tract by showing their ability and willingness to deliver the wood which they could make out of tree tops. Instruction No. 2 was, therefore entirely erroneous.

Instruction No. 1, requested on behalf of the appellant, and refused. This was a peremptory instruction requested on behalf of the defendant. The same should have been granted. *Gulfport Cotton Oil Company* v. *Reneau,* 94 Miss. 904; *Moore* v. *Love,* 57 Miss. 765; *Atherton* v. *Newhall* (123 Miss. 141), 25 Am. Rep. 47; *Moore* v. *Love,* 57 Miss. 763, 25 Am. Rep. 47.

We therefore submit and insist that this case should be reversed. We really think that there should be a judgment in the supreme court for the defendant, and if it is found that this relief cannot be granted we insist that it ought to be remanded for a fair trial under proper evidence and under proper instructions.

*Rawls & Hathorn,* for appellee.

We contend that our instruction No. 3 fairly and correctly defines merchantable pine timber, and that appellants refused instruction No. 5 does not correctly define "merchantable pine timber." 27 Cyc., 481, defines merchantable as being "salable and fit for the market; sound and undamaged; such as is generally sold in the market, vendible in market. However the custom and usage of the trade may control the meaning of the term in the connection in which it is employed in any particular case."

From the above it is clear that the word merchantable is correctly defined in our instruction No. 3. It is also true that it, as there defined, is applicable in that we have shown and it is undisputed that "there was a general demand on the open market in the territory where paperwood timber is found, at the date of appellees deeds both from the Avery heirs and from the board of supervisors, and had been for many years prior thereto.

Again we are certainly right when we say in this instruction that "merchantable pine timber does not necessarily mean only such timber as can be used for saw mill purposes." In some sections of this state, and of Louisiana, great quantities of long leaf pine poles, measuring not over six inches at the stump, are used and marketed for the purpose of making creosoted telegraph poles, and these pass without question in these localities, at this time, under a deed conveying the merchantable pine timber. Twenty or thirty years ago these poles would not have passed by such a deed because there was no market for them, they were not merchantable, if you please, and were not in the contemplation of the parties, but now when there is a general demand for these small pine timbers, they pass as merchantable timber. Again twenty years ago when cross ties were hewn out of nothing but dead heart pine, a deed to the merchantable pine timber would not have carried with it the right to cup sap pines that will square six or eight inches into cross ties, but for the past few years, since there is and has been a general demand and market for sap ties squaring six inches and up, a deed now made to the merchantable pine timber on land carries with it the right to cut everything big enough to make a cross tie, and this right is never questioned where the conveyance has been made since this general demand or market has been created for these sap ties.

Again, a deed to the merchantable timber on a piece of land dated say twenty-five or thirty years ago would carry with it only the right to cut pine timber measuring at least sixteen inches at the stump at the date of the conveyance, for the reason that thirty years ago nothing was considered merchantable except pine, and that from sixteen inches and upwards. In other words, at that time there was no market or general demand for pine timber under sixteen inches in diameter, hence only pine timber over sixteen inches in diameter was merchantable but to-day if you should get a deed to the merchantable timber on a piece of land it would carry with it all timber of every variety and

kind that was merchantable, or for which there was a general market and demand. With a deed to the merchantable timber, as the term is used, accepted and considered now, everything is taken for which there is a general demand on the open market.

These illustrations are used to show and demonstrate to the court that what was merchantable timber thirty years ago or twenty years ago, or even ten years ago, in the identical community is not merchantable timber now, or rather what is merchantable timber now was not merchantable timber then. And this is true not so much because of changing customs for in some localities possibly even then small timbers were merchantable, and certainly in a great many sections of the country hardwood was merchantable but the one thing that has always controlled so as to make timber merchantable or not merchantable, and the only thing so far as we have been able to discover, is the fact that "there is a general demand for it on the open market and in the territory where it is to be used, or offered for sale." This, then is what makes timber merchantable, and is what has brought about the change in the meaning of merchantable timber during the past thirty years.

It next remains to be seen what is timber. Of course in the days of Noah Webster, timber was considered principally as being used solely for building houses or ships; but times have changed wonderfully since Mr. Webster's day. The writer is occupying a suite of offices now that are ceiled entirely out of boards made of pulp wood, or paper wood. Beaver Board, made of wood pulp, and a more beautiful ceiling and wall we have never seen, is just as lasting as the highest grade pine or cypress lumber; houses are covered with shingles made of paper or pulp wood; paper and products made from wood fiber and wood pulp are now being used for things that in the days of Mr. Webster were never dreamed of, hence we cannot rely upon his defintion of timber to learn what it now is. We beg to call the court's attention to the following citations.

*Tenny* v. *Mulvaney*, 9 Ore. 405; *U. S.* v. *Stores*, 14 Fed. 824.

From this it is plain that size is not the criterion of what makes a true timber, but it depends entirely on something else. A hickory tree three inches in diameter from which an axe handle could be manufactured would be timber; a sap pine six inches in diameter from which a telephone pole could be made by creosoting would be timber. *United States* v. *Soto*, 64 Pac. 419; *Bearce* v. *Dudley*, 34 Atl. 260, 88 Me. 410; *Gogo* v. *Boyle*, 109 N. W. 977, 130 Wis. 154; *Kerl* v. *Smith*, 96 Miss. 827.

It is our contention, however, that even if instruction on No. 3 given for appellees does not correctly announce the law and should not have been given, that no harm has been done appellant and the case should be affirmed.

SYKES, J., delivered the opinion of the court.

The appellees as plaintiffs in the circuit court sued and recovered judgment against the defendant lumber company for the breach of a contract to pay the plaintiffs six dollars a cord for all paper wood on certain lands owned by the plaintiffs. This land was a sixteenth section. In 1918 the plaintiffs purchased the merchandise timber from the board of supervisors and also from the lessee of the lands. The paper wood timber sold to the defendant was pine timber from three inches in diameter up to eight inches. Also the tops of trees already cut of this diameter were included in the sale.

While there are a number of assignments of error in the record, it is only necessary to consider one, and that is whether or not this small timber from three to eight inches in diameter is merchantable timber. If it is, then the plaintiffs owned this timber; if not, then the plaintiffs had no title to it and their cause of action must fail. The uncontradicted testimony in the case shows that several years previous to the purchase of this timber by the plaintiffs there was a market price in this locality for paper wood

timber caused by the near location of two paper mills. It seems that this small timber, through a manufacturing process at the paper mill, is ground up into a pulp from which paper is made.

On behalf of the plaintiff the court instructed the jury upon this question as follows: "The court instructs the jury for the plaintiffs that the word 'merchantable' means anything that is marketable, sound, and undamaged for the purpose for which such article is to be used, and for which there is general demand on the open market in the territory where such article is kept for sale or found; the court further instructs the jury that 'merchantable pine timber' does not necessarily mean only such timber as can be used for sawmill purposes, but it means any kind of pine timber for which there is a general demand and market for commercial purposes in the territory where such pine timber is."

In the case of *Kerl* v. *Smith,* 96 Miss. 827, 51 So. 3, this court held that the use of the word "merchantable" in a contract, with nothing to explain what kind of timber was meant, was not so accurate a designation of what was sold as to preclude investigation as to what was meant by it in the contract.

Years ago, when practically the only use made of timber was to manufacture it into lumber, it was then held that merchantable timber was only those large sticks of wood squared or capable of being squared for building houses or vessels. Since which time, however, the uses of timber have multiplied; among other things is now that of manufacturing small timber into paper. We have these paper mills scattered over the country, and in their vicinity there is always a market price for this small timber which can be manufactured into paper. This is well expressed in the opinion of the court in the case of *U. S.* v. *Stores,* 14 Fed. 824, where it is said: "But the numerous uses to which wood has come to be applied, and the general employment of all kinds of trees for some valuable purpose, has wrought a change in the general acceptation of terms in connection

therewith, and we find that Webster defines 'timber' to be 'that sort of wood which is proper for buildings or for tools, utensils, furniture, carriages, fences, ships, and the like.'"

Again in the case of *U. S.* v. *Soto,* 7 Ariz. 230, 64 Pac. 419: "Timber" includes "all kinds of wood used either for building purposes or in the manufacture or construction of useful articles."

"Merchantable," as defined in 27 Cyc. 481, is "salable and fit for the market; sound and undamaged; such as is generally sold in the market; vendible in the market."

At the time the plaintiffs purchased this timber, the small timber was salable and had a market value as paper wood or pulp wood timber; that is, timber suitable to be manufactured at a paper mill into paper. Under this testimony we therefore conclude that this small timber was merchantable timber, and therefore the title to it passed to the appellees under their deeds.

We have carefully considered the other assignments of error and find no merit in them. The judgment of the lower court is affirmed.

*Affirmed.*