STEVENS, et al. *v.* McSWAIN

No. 41670          January 23, 1961          126 So. 2d 263

*Ben Stevens,* Hattiesburg; *Jesse W. Shanks,* Purvis, for appellants.

*Wm. V. Murry,* Hattiesburg, for appellee.

ETHRIDGE, J.

This is a suit to cancel a deed to the merchatable timber on land. It also involves a plea of res judicata. Simplifying the pleadings, Howard T. McSwain, appellee, brought this suit in the Chancery Court of Perry County against Clayton McSwain, Ben Stevens, and C. C. Riggs, Sr. The chancery court rendered a decree for complainant, which we affirm.

A. Allen McSwain was the owner of the 320 acres in question, when on July 1, 1929 the lands were sold to the State of Mississippi for delinquent ad valorem taxes. Thereafter A. Allen McSwain died. On September 25,

1939 the State executed a forfeited tax land patent to the widow of the original owner, Mrs. A. Allen McSwain.

On September 7, 1939, several weeks prior to the date of the patent, Mrs. A. Allen McSwain executed a timber deed, by which she conveyed to her son, Clayton Mc-Swain, appellant and defendant below, "all merchantable timber" on the property.

On March 18, 1948, Clayton McSwain conveyed to Ben Stevens and C. C. Riggs, Sr. each a one-fourth interest in the merchantable timber on this land.

On June 13, 1957, Mrs. A. Allen McSwain conveyed the land by warranty deed to Howard McSwain. Subsequently, Howard McSwain brought this action to cancel the 1939 timber deed to his brother from his mother, Mrs. A. Allen McSwain. He contended that Clayton had long since cut all of the merchantable timber which was of merchantable size on or before September 9, 1939, the date of the timber deed to Clayton. Stevens and Riggs were also made parties defendant.

The chancery court heard considerable testimony concerning the cutting of timber on the land by Clayton McSwain and his assignees since 1939. The case was tried in 1958. Two experienced foresters testified also on this issue. The chancellor found as a fact that there were at least two cuttings of the timber by defendants and their agents after the 1939 deed and before the suit was filed; that there was no merchantable or profitable market for any of the timber which was on the premises in September 1939, and which was left after grantee, Clayton McSwain, and his assignees cut it; that the remainder of the 1939 timber was "profitless because of a situation where marketability was not feasible." Hence the final decree was in favor of complainant. It adjudicated that Howard McSwain was the owner of the land, and cancelled the 1939 timber deed to Clayton McSwain, and the 1948 fractional timber deed from Clayton to Stevens and Riggs, as clouds on complainant's title.

*First.* There was substantial evidence to support the finding of the trial court that there was no merchantable timber on the land at the time of the filing of this suit, which was merchantable on September 7, 1939, the date of the timber deed to Clayton McSwain. This was an issue of fact on conflicting evidence. Lay witnesses for the parties disagreed, as did the two foresters. It is undisputed that after 1939 Clayton McSwain and his assignees cut large quantities of timber on the property. The ultimate question was whether after those cuttings there remained any timber which was merchantable as of 1939. Certainly we cannot say that the chancellor was manifestly wrong in answering that question in the negative.

Where standing timber, such as "merchantable timber," is sold, only such timber is conveyed by that deed as is suitable for the specified purpose at the date of the deed or contract of sale. The sale does not include timber which may become so subsequently by growth, or by changed conditions in the lumber market, or by change in custom, unless the instrument itself expresses a different intention. 54 C. J. S., Logs and Logging, Sec. 17(b), pages 696-697; Gerard v. Gill, 195 Miss. 726, 15 So. 2d 916 (1943); Overby v. Burnham, 190 Miss. 435, 200 So. 591 (1941); Armstrong v. Jones, 177 Miss. 359, 170 So. 637 (1936).

In short, the merchantability of timber is determined by the standard in use at the time the deed is executed, in the absence of anything in the conveyance to show a contrary intention. It includes timber ordinarily used for sale or manufacture in the particular locality at that time. 54 C. J. S., Logs and Logging, Sec. 17.

In Great Southern Lbr. Co. v. Newsom Bros., 129 Miss. 158, 91 So. 864 (1922), the Court applied these rules, and said that the word "merchantable" means "anything that is marketable, sound, and undamaged for the

purpose for which such article is to be used, and for which there is general demand on the open market in the territory where such article is kept for sale or found.'' This definition authorizes parol evidence to determine what was meant by the phrase in the contract or deed at the time it was executed. Kerl v. Smith, 96 Miss. 827, 51 So. 3 (1910).

In view of this disposition of this factual issue, we do not reach the question of whether the court was also warranted in its interpretation of the 1939 timber deed, by implying in it a reasonable time limitation on cuttings under that conveyance.

*Second*: The other issue is whether the chancery court properly sustained objections to evidence offered by defendants, asserting a defense of res judicata based upon a decree in cause No. 2937, Chancery Court of Perry County, dated July 13, 1956. This was not error. Although the exact nature of the relief sought in that suit is not clear from the pleadings and the record, it appears that it was an action by the children and heirs of A. Allen McSwain, deceased, except Clayton McSwain, against Clayton and his mother, Mrs. A. Allen McSwain, seeking to obtain an adjudication that defendants held title to the land received by a forfeited tax land patent, in trust and as tenants in common with the other heirs. Apparently that suit, filed in 1947, was not prosecuted by complainants, because the final decree of July 13, 1956 found they had not filed any further pleadings after an earlier decree, and dismissed the bill with prejudice.

The claim of title asserted by Howard McSwain was not vested in him at the time of the 1956 decree. Under that decree, Mrs. A. Allen McSwain owned the property. In 1957 she conveyed it to Howard McSwain. This deed created an estate in Howard McSwain which did not exist at the time of the proceedings and decree in cause No. 2937. Howard did not have that title at that time. So the issues in that cause are not the same as

the present ones. Howard is claiming now a separate and independent title, through his mother. The 1956 decree did not preclude him from obtaining other rights subsequently, which he did by purchasing the fee title to the land from his mother in 1957.

■■■ The governing principle is stated in 50 C. J. S., Judgements, Sec. 650, p. 92: "The estoppel of a judgment extends only to the facts and conditions as they were at the time the judgment was rendered, and to the legal rights and relations of the parties as fixed by the facts so determined; and when new facts or conditions intervene before the second suit, furnishing a new basis for the claims and defenses of the parties respectively, the issues are no longer the same, and hence the former judgment cannot be pleaded in bar in the subsequent action."

In short, a judgment in an action affecting property is not a bar to a later suit based on a title subsequently acquired. 50 C. J. S. p. 93, fn. 69; 30A Am. Jur., Judgments, Sec. 335; see also Commercial Credit Co., Inc. v. Newman, 189 Miss. 477, 198 So. 303 (1940).

Affirmed.

*Lee, Arrington, McElroy* and *Rodgers, JJ.,* concur.