## ZWERG *v.* ZWERG

No. 43659 November 8, 1965 179 So. 2d 821

*Thomas J. Wiltz,* Biloxi, for appellant.

*John A. Evans,* Gulfport, for appellee.

Smith, J.

The appellee, Janet L. Zwerg, filed her bill for separate maintenance against appellant, Ralph F. Zwerg, in the Chancery Court of Harrison County, Mississippi. In her bill, appellee alleged that the parties were married and living apart because appellant had deserted her, and asked for an award for her separate support.

Appellant answered and, among other things, set up as a plea in bar a denial that the parties were husband and wife, alleging that they had been lawfully divorced by a decree of the District Court of Cleveland County, Oklahoma. A certified copy of the Oklahoma proceedings, including the decree, was made an exhibit to the answer in support of the plea in bar.

After a hearing, the chancellor overruled the plea in bar and granted an interlocutory appeal to this Court.

The parties were married in 1958 and have three young children. When the present suit was filed, both parties were residents of Harrison County, Mississippi, and the children were with complainant in that county.

In May 1963, appellant sued appellee for divorce in the District Court of Cleveland County of the State

of Oklahoma upon the ground of incompatability. In that case, appellee answered, waived service, and admitted the material allegations of the complaint. The case was uncontested and a decree was entered on June 24, 1963, granting appellant a divorce. The decree contained this statement: "Provided, that this part of the decree does not become absolute and take effect until six months from the date hereof." The same provision appears again in the decree immediately above the signature of the judge. This language is required by Oklahoma Statutes, Title 12 section 1282 (1951) which reads:

"Every decree of divorce shall recite the day and date when the judgment was rendered in the cause, and that the decree does not become absolute and take effect until the expiration of six months from said time, or as provided in case of appeal."

Another Oklahoma statute provides that divorced persons may not remarry for six months following the date of the decree. Okla. Stat. Tit. 12, § 1280 (1951).

When the present case came on for trial, the chancellor heard as a preliminary matter the plea in bar interposed by appellant. Appellant introduced a certified transcript of the Oklahoma divorce proceedings, including the divorce decree, and rested. Evidence was then introduced upon the part of appellee showing that she and appellant had effected a reconciliation, had resumed their marital relationship prior to the expiration of the six month period set out in the Oklahoma decree, and had lived together as husband and wife for almost a year before the final separation. Proof was made that at the time of the reconciliation, for the purpose of inducing her to return to him, appellant had assured appellee that it was not necessary that any formal action be taken to vacate the Oklahoma decree, but that their reconciliation and resumption of marital relations of itself had the effect of vacating the decree, and formal application "to take it off the books" might

be made at any time. The appellee relied upon this representation upon the part of appellant, and thereafter they continued to live together as husband and wife from December 20, 1963, until June 1964 when appellant deserted appellee and their children in Harrison County, Mississippi.

The record is replete with testimony to the effect that during the period of approximately a year following their reconciliation the appellee and appellant openly lived together and publicly recognized each other as husband and wife. As an Air Force officer, appellant applied for and obtained the necessary identification card and commissary card for her use as his wife; he obtained her admission into the base hospital upon the same representation; as his wife, she belonged to the Officers' Wives Club and at all social functions appeared and was recognized by appellant as his wife. Appellant's automobile liability insurance policy showed appellee as his wife. There was a joint checking account in their names as husband and wife. In fact, appellant and appellee maintained a home in which they continually lived together as husband and wife with their children.

A fellow officer testified that during this period he was told by appellant that he had deceived appellee as to the divorce decree and was "in a pretty amusing situation" and was in "pretty good shape", in that he might live with her as long as he pleased and throw her out at any time he desired, and that he was beginning to think about doing so. This admission on the part of appellant serves to emphasize his fraudulent intentions and the shocking nature of his conduct in persuading appellee to return to him, all the while with the secret belief on his part that he might and would discard her at will.

At the conclusion of the hearing on the plea in bar, the chancellor delivered an oral opinion in which he

found that the Oklahoma decree was not void, but by its terms was voidable for a period of six months following its date of entry, and placed it within the power of the parties to resume the marriage and thereby render the Oklahoma District Court decree of no further effect. He found that appellant had committed a fraud' in inducing appellee to resume the marital relationship under the circumstances shown in the record, and that appellant in his testimony had admitted having done so. He found that the marital relationship had been resumed and a complete reconciliation had been effected within the six month period provided in the decree during which it was not absolute. He considered that the Oklahoma decree was not a final judgment so as to be entitled to full faith and credit under the United States Constitution. It was his opinion that the resumption of the marital status by the parties rendered the Oklahoma decree nugatory, and that formal proceedings to expunge it from the records might be begun at any time.

He further held that the acts of the parties in respect to the reconciliation and the inducements held out by the appellant occurred after the rendition of the Oklahoma decree and, therefore, as to them the decree was not res judicata. He held further that because of his conduct appellant was estopped to assert the Oklahoma decree in bar of appellee's suit for support.

At the time the suit was filed, the parties had been residing in Harrison County, Mississippi, as husband and wife for almost a year; their children were in that county; the separation occurred there. For those reasons, the chancellor considered that the public policy of Mississippi was involved and that the Mississippi court had jurisdiction in respect to the marital status.

██ ▆ The public policy of Mississippi will not allow to stand a decree of divorce obtained by fraud, ██ ▆ and such decree may be attacked successfully at any

time whether the basis of the attack appears on the face of the record or not. Watts v. Watts, 123 Miss. 812, 86 So. 353 (1920).

In 27A C.J.S. *Divorce* § 161(4) at 623 (1959), it is stated:

"Condonation, reconciliation, cohabitation, or resumption of the marital relation after the entry of an interlocutory decree destroys, or estops a party to assert, the right to a final decree and justifies the court in refusing a final decree in vacating or setting aside the interlocutory decree, or in setting aside a final decree, if it has been obtained by one party without the knowledge of the other, or it makes it the duty of the court to refuse to grant a final judgment of divorce. Thereafter the parties are entitled to such rights as arise from the legal relation of husband and wife, and the grounds for divorce which led to the grant of the interlocutory decree are not available on subsequent proceedings between the parties."

The Oklahoma court said in LeClair v. Calls Him, 106 Okla. 237, 252, 233 Pac. 1087, 1092 (1925), (quoting from Rodgers v. Nichols, 15 Okla. 579, 83 Pac. 923):

"A decree of divorce will be annulled upon the ground of fraud and imposition practiced upon the court or the adverse party."

And in Clay v. Robertson, 30 Okla. 758, 120 Pac. 1102 (1912), that Court held that if a divorce was fraudulently obtained by one party, it should be set aside at the suit of the other party, even after the wrongdoer's death when the innocent party's property rights are affected.

In Wooden v. Wooden, 113 Okla. 81, 83, 239 Pac. 231, 233 (1925), the Oklahoma court stated (quoting from Meldrum v. Meldrum, 15 Colo. 478, 24 Pac. 1083):

"The relationship of husband and wife is one of special confidence and trust, requiring the utmost good faith and frankness in their dealings with each other;

and where either one is false to the other and fraudulently or through coercion procures an unjust advantage, chancery may relieve against the transaction. . . ."

In 113 Okla. at 83, 239 Pac. at 233, the Court (quoting from Young v. Young, 17 Minn. 181, Gil. 153) further stated:

"In an action for divorce, any course of action by plaintiff which is intended to and does prevent the defendant from setting up and establishing a defense to the action is a fraud upon the administration of justice, as well as upon the defendant, for which the judgment thereby will be set aside."

■■■ We accord to the Oklahoma divorce decree the full faith and credit to which it is entitled under the United States Constitution article 4 section 1. However, this does not preclude this Court from giving consideration to the fact that it was allowed to become effective as a result of fraud practiced upon appellee by appellant.

The precise question here presented has not been passed upon by the Oklahoma Supreme Court, but we are constrained to believe, in view of the cases in which it has held void divorce decrees obtained by fraud, that under the facts in this record, if the question were presented to the Oklahoma Supreme Court, it would conclude that the divorce decree never became effective in view of the circumstances and of the fraud practiced upon appellee by appellant.

■■■ The state is universally held to have an interest in the preservation of marriages and in seeing to it that husbands discharge their obligation to support their families. We believe that the Oklahoma legislature must have intended, among other things, to provide a delay period of six months following the rendition of a divorce decree before it should become effective, in order to provide a time during which the parties might have an op-

portunity upon more mature deliberation to become reconciled and to prevent a final rupture of the marriage. So construed, this is a salutary provision, particularly where, as in the case here, children are involved.

It is unthinkable that the Oklahoma legislature intended a result so harsh and inflexible that, although the parties may become reconciled during the six month period, resume their marital relationship, and again live together as husband and wife, maintain a home for themselves and their children, that, nevertheless, upon expiration of the six month period, the marriage shall be finally dissolved.

In Burkdall v. Burkdall, 178 Okla. 392, 394, 62 P. 2d 1266, 1268 (1936), the Oklahoma court, quoting from the *Wooden* case, supra, said:

"Courts of general jurisdiction have inherent power, *independent of any statutory provisions,* and in divorce cases, no less than in other cases, to set aside and annul any judgment or decree procured by fraud and deceit of the successful party, practiced upon the complaining party to the action and the court." (Emphasis supplied)

▮▮ In the case here, the Oklahoma decree was not in form an interlocutory decree, but provided as required by statute that it should not become absolute nor be in effect until six months after its date. The reconciliation of the parties and the resumption of their marital relationship within the six month period, and the fraudulent representation to appellee by appellant that this of itself was all that was necessary to be done to restore the marriage, constituted a fraud upon appellee which estops appellant from asserting that failure to have it formally set aside is a valid defense to appellee's suit for support in this case.

30A Am. Jur. *Judgments* § 333 (1958) states: "The application of the doctrine of res judicata in favor of

a person may be precluded by acts constituting a waiver or estoppel.''

■■ ■ Appellant is precluded by his acts after obtaining the Oklahoma divorce, and, therefore, estopped from asserting that the Oklahoma divorce decree is res judicata. See also 50 C.J.S. *Judgments* § 855 (1947).

■■ ■ It is said that a judgment operates as an estoppel; that the facts merge into the judgment. However, this estoppel or res judicata characteristic of a judgment extends only to the facts and circumstances as they were at the time the judgment was rendered. Here, within the six month period after the Oklahoma decree, these material circumstances concerning the husbands fraud to his wife occurred. Stevens v. McSwain, 240 Miss. 178, 126 So. 2d 263 (1961), applied this principle, and held that the judgment was not res judicata as to the facts and circumstances subsequently occurring. The court in 240 Miss. at 183, 126 So. 2d at 266, said:

> ''The governing principle is stated in 50 C.J.S. Judgments, § 650, p. 92: ''The estoppel of a judgment extends only to the facts and conditions as they were at the time the judgment was rendered, and to the legal rights and relations of the parties as fixed by the facts so determined; and when new facts or conditions intervene before the second suit, furnishing a new basis for the claims and defenses of the parties respectively, and issues are no longer the same, and hence the former judgment cannot be pleaded in bar in the subsequent action.' ''

■■ ■ In short, under these authorities, appellant is precluded by his own acts, constituting an estoppel, from asserting that the doctrine of res judicata should be applied with reference to the Oklahoma decree. Further, res judicata extends only to facts and conditions as they existed at the time the judgment was rendered, and does not apply where there has been a subsequent

material change of an essential condition upon which the judgment must rest and which has occurred prior to the date on which the judgment, by its terms, shall take effect.

 As was said in the *Watts* case, supra, it makes no difference whether the attack of fraud is made by the original bill or by petition, or by motion. ██ The court will look to the substance of things rather than mere procedure and will not permit a person practicing fraud to benefit by his or her acts.

We think the findings of the chancellor were supported by the testimony in the record; that his conclusions of law were correct in substance; and, that the plea in bar was properly rejected.

Affirmed and remanded.

*Ethridge, P. J., and Gillespie, Jones and Brady, JJ.,* concur.