716 So.2d 1123 (1998)
Robert F. JOHNSON, Appellant,
v.
Catherine POGUE a/k/a Catherine Pogue Johnson, Appellee.
No. 96-CA-01079 COA.
Court of Appeals of Mississippi.
June 23, 1998.
*1126 Wynn E. Clark, Gulfport, for Appellant.
William E. Tisdale, Sekul Hornsby Tisdale & Baker, Biloxi, for Appellee.
Before BRIDGES, C.J., and COLEMAN, DIAZ and SOUTHWICK, JJ.
SOUTHWICK, Judge, for the Court:
¶ 1. Robert Johnson and Catherine Pogue were granted a divorce by the Superior Court of California in 1989. After the divorce, Mr. Johnson relocated to Virginia and Ms. Pogue returned to Mississippi. Mr. Johnson was involuntarily retired from the Navy in 1994. He filed a petition in Mississippi for registration of a foreign judgment and a motion seeking a modification of the California judgment. Ms. Pogue answered and filed a counterclaim for contempt, asserting that Mr. Johnson was delinquent in his payments of spousal support. The chancellor found that Mr. Johnson was not fully complying with the California judgment. The court ordered him to purchase an annuity for his ex-wife and to name her as beneficiary on a life insurance policy. The court entered a judgment for past due spousal support and awarded attorney's fees. However, the court also concluded that Mr. Johnson's involuntary retirement constituted a material change in circumstances. The court reduced the spousal support payment from $1,150 to $500 per month.
¶ 2. Mr. Johnson appeals asserting that the chancery court erred in these respects: (1) by applying Mississippi substantive law rather than California and federal law, (2) by ordering a private annuity be obtained, (3) by failing to terminate the spousal support and term life insurance, and (4) by awarding attorney's fees to Ms. Pogue. We affirm on the first allegation, reverse and remand on the second and third, and reverse and render on the fourth.

STATEMENT OF FACTS
¶ 3. Robert Johnson and Catherine Pogue were married on August 16, 1969, and lived together until February 15, 1987. Their one child is Janna Michelle Johnson, who was born in 1973. After holding a contested proceeding in December 1988, the Superior Court of California entered a judgment of divorce. The judgment contained provisions relating to child custody and support, spousal support, retirement benefits, and a division of property. The court noted that Ms. Pogue had made a substantial contribution to the success of Mr. Johnson's naval career while significantly impairing her own earning capacity. Consequently, the court awarded her one half of Mr. Johnson's retirement benefits that were allocable to the period of their marriage. That was approximately 19 years out of what would ultimately be 28 years of military service. Upon retirement from the Navy, Mr. Johnson was required to elect a survivor's benefit plan that would provide Ms. Pogue with a continuation of benefits during her lifetime following his death.
¶ 4. The California court also found that Ms. Pogue, who had little education, did not possess "any real marketable skills." After concluding that her plan to acquire a Bachelor of Science degree in Nursing was reasonable, the court ordered Mr. Johnson to pay spousal support in the amount of $1,550 per month. The court also stated that the amount of spousal support would be reduced to $1,150 per month following the close of escrow for the sale of the family residence. The support would terminate upon the death of either party, the remarriage of Ms. Pogue, or further order of the court. Mr. Johnson was to maintain Ms. Pogue as the beneficiary of $75,000 of an insurance policy proceeds as long as he was required to provide support to her.
¶ 5. The California residence eventually sold in June 1993, and Ms. Pogue received *1127 approximately $36,000 (also referred to as $45,000, which may be a gross amount) as her share of the equity in the home. She testified that she did not at first seek employment in Biloxi after moving there in March 1993 because her mother, who lived in Meridian, was in ill health. In August 1994, Ms. Pogue obtained employment, averaging thirty hours a week, at a gift shop in Biloxi for five dollars an hour, but was laid off two months later. She testified that she did not attempt to seek further salaried employment and instead began to perform volunteer work at the local theater and at a museum.
¶ 6. Following the death of her mother, Ms. Pogue moved to Meridian and rented a house from her sister. She received an inheritance of approximately $80,000 from her mother's estate and placed the money in an interest bearing account. Although Ms. Pogue had received money from the sale of the marital residence in California and from her mother's estate, she asserted that she was unable to fulfill her plans of becoming a nurse. She stated that a combination of a lack of funds, a back injury from her teenage years, and her mother's illness limited her ability to enroll in a nursing program. Ms. Pogue testified that despite the back injury, she was "generally healthy."
¶ 7. After the divorce, Mr. Johnson remarried and eventually settled in Fairfax, Virginia. He and his present wife have two children. In August 1994, Mr. Johnson learned that he would be involuntarily retired from the Navy after twenty-eight years of service because of reductions in military force. That was two years prior to his previously expected retirement. Recognizing the effect that retirement would have on his income and his ability to maintain his obligations, Mr. Johnson consulted with a Navy Judge Advocate. According to Mr. Johnson, the attorney recommended that he seek a clarification of the California judgment. In the month of his retirement, Mr. Johnson ceased making spousal support payments to Ms. Pogue of $1,150 and instituted payments of 31% (1/2 X 19 years/28 years) of each retirement check to Ms. Pogue, which gave her $1,141 monthly. For clarity, it should be noted here that Ms. Pogue argues that after Mr. Johnson's retirement she should have continued to receive $1,150 alimony and gained an extra $1,141 from retirement.
¶ 8. On July 8, 1994, Mr. Johnson filed a motion in Harrison County Chancery Court to modify the California judgment, alleging a material and substantial change in circumstances. He asserted that the payment of spousal support was unreasonable due to the diminution in his monthly income. Moreover, he contended that his ex-wife would receive a substantial monthly payment in the form of retirement benefits allotted from his pension. Mr. Johnson also argued that Ms. Pogue's cost of living was substantially reduced by her relocation from California to Mississippi. The petition requested that the chancery court terminate his obligation to pay spousal support and relieve him of the obligation to designate Ms. Pogue as the beneficiary of his survivor's benefit plan.[1] Ms. Pogue answered and counter-claimed, seeking a monetary judgment for past due spousal support and a citation for contempt.
¶ 9. Mr. Johnson testified that as a result of retirement, his net income had decreased from $4,500 per month to $3,500 per month. Mr. Johnson stated that he was able to obtain part-time, contract work following his retirement from the Navy. However, he asserted that his attempts to find full-time employment were unsuccessful. Mr. Johnson argued that Ms. Pogue did not make any effort to obtain employment or further her education after the divorce. Since she received $1,141 from Johnson's retirement benefits, Mr. Johnson contended that the court should terminate his obligation to pay any spousal support.
¶ 10. The chancery court adopted the California court's findings of fact. The chancellor found that Mr. Johnson's retirement and reduction in income constituted a material change in circumstances. Accordingly, the court modified the monthly spousal support from $1,150 to $500 per month and granted *1128 Ms. Pogue a judgment of $12,650 for the past due support. The court also held that Mr. Johnson failed to comply with the California judgment by not electing Ms. Pogue as the beneficiary of his Navy Survivor Benefit Plan. Since Mr. Johnson elected his present wife as the beneficiary of his Navy plan, the court determined that Mr. Johnson would be "unable to perform as ordered by the California Court." Consequently, the court ordered him to purchase an annuity with Ms. Pogue as the beneficiary in the amount of thirty-one percent of his net retirement income with a reduction to reflect Ms. Pogue's obligation to pay part of the premium.
¶ 11. The court concluded that Mr. Johnson also failed to maintain Ms. Pogue as the beneficiary of part of his term life insurance. The court ordered Mr. Johnson to provide life insurance in the amount of $75,000 with Ms. Pogue as the sole, irrevocable beneficiary. Finally, the court awarded Ms. Pogue attorney fees of $1,500 although she stated that she had the present ability to pay the fees.

DISCUSSION

I. CONFLICT OF LAWS:

A. Modification of Spousal Support
¶ 12. Mr. Johnson asserts that the chancery court erred in applying Mississippi substantive law to the modification of the California divorce decree. Since the chancery court adopted the California findings of fact, Mr. Johnson contends that the chancery court should also have applied California law to the modification of spousal support. Additionally, he argues that the chancery court should have applied federal law in regard to the Navy Survivor Benefit Plan. He asserts that the court should have applied federal law to determine whether he could amend his election and thereby comply with the original judgment.
¶ 13. The Mississippi Supreme Court has adopted the center of gravity or the most significant relationship test embodied in the Restatement (Second) of Conflicts of Law. Church v. Massey, 697 So.2d 407, 410 (Miss. 1997); Spragins v. Louise Plantation, Inc., 391 So.2d 97, 99 (Miss. 1980). In resolving whether to apply the substantive laws of Mississippi or the laws of another state, under the center of gravity test a court must determine which "state has the most substantial contacts with the parties and the subject matter of the action." O'Rourke v. Colonial Ins. Co., 624 So.2d 84, 86 (Miss. 1993). The supreme court has cited with approval the following considerations in Section 6 of the Restatement (Second) of Conflict of Laws in determining the applicable law:
(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relevant interests of those states in the determination of the particular issue,
(d) the protection of justified expectation,
(e) the basic policies underlying the particular field of law,
(f) certainty, predictability, and uniformity in result, and
(g) ease in the determination and application of the law to be applied.
Section 6, Restatement (Second) of Conflicts of Law (1971), cited in Spragins v. Louise Plantation, Inc., 391 So.2d 97, 100 (Miss. 1980). Despite the court's acceptance of the enumerated factors in the Restatement, the actual "evaluation and balancing of these factors has proven quite elusive." Boardman v. United Servs. Auto. Ass'n, 470 So.2d 1024, 1031 (Miss. 1985).
¶ 14. In Newman v. Newman, 558 So.2d 821, 822 (Miss. 1990), the supreme court was faced with a choice of law question concerning a wife's claim of a property right in her former husband's military retirement pension. The couple was married in California and moved to many different places in the United States and abroad during his military career. Id. Subsequently, the husband filed for divorce while stationed in Mississippi. Id. The court resorted to the Restatement for controlling principles on whether Mississippi or California law applied. Id. at 824. The court concluded that the wife's rights, if any, were governed by the substantive law *1129 where the husband "was domiciled at the time his rights in the pension were earned." Id. at 825.
¶ 15. In this case, the center of gravity test favors the application of Mississippi law. Following the divorce, both parties left California. Mr. Johnson relocated to Virginia and Ms. Pogue settled in Mississippi. Neither party has instituted any proceedings in California since the entry of the divorce decree in 1989. Additionally, Mr. Johnson filed a petition to enroll the foreign judgment and to modify the decree in Mississippi; Ms. Pogue counter-claimed. Both parties availed themselves of the jurisdiction of the Mississippi courts, and Mississippi is a convenient forum for resolution of the issues. Since the entry of the decree, the most significant contacts are with Mississippi. California would seem to have no further connection to the couple. The chancery court correctly applied Mississippi substantive law to the modification issues.
¶ 16. Although we find that Mississippi substantive law applied to the modification of spousal support, we note that the differences between California and Mississippi law on spousal support are rather insignificant. Under Mississippi law, the chancellor may take into consideration the following factors in determining the proper amount of alimony:
1. The income and expenses of the parties;
2. The health and earning capacities of the parties;
3. The needs of each party;
4. The obligations and assets of each party;
5. The length of the marriage;
6. The presence or absence of minor children in the home, which may require that one or both of the parties either pay, or personally provide, child care;
7. The age of the parties;
8. The standard of living of the parties both during the marriage and at the time of the support determination;
9. The tax consequences of the spousal support order;
10. Fault or misconduct;
11. Wasteful dissipation of assets by either party; or
12. Any other factor deemed by the court to be "just and equitable" in connection with the setting of spousal support.
Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss. 1993). In order to justify the modification of alimony, there must be a "material change in the circumstances of the parties arising after the original decree was rendered." Anderson v. Anderson, 692 So.2d 65, 70 (Miss. 1997). The change in circumstances must not have been anticipated at the time of the entry of the original decree. Id.
The award of spousal support in California is predicated upon statutory criteria:
(a) The extent to which the earning capacity of each party is sufficient to maintain the standard of living established during the marriage, taking into account all of the following:
(1) The marketable skills of the supported party; the job market for those skills; the time and expenses required for the supported party to acquire the appropriate education or training to develop those skills; and the possible need for retraining or education to acquire other, more marketable skills or employment.
(2) The extent to which the supported party's present or future earning capacity is impaired by periods of unemployment that were incurred during the marriage to permit the supported party to devote time to domestic duties.
(b) The extent to which the supported party contributed to the attainment of an education, training, a career position, or a license by the supporting party.
(c) The ability to pay of the supporting party, taking into account the supporting party's earning capacity, earned and unearned income, assets, and standard of living.
(d) The needs of each party based on the standard of living established during the marriage.
(e) The obligations and assets, including the separate property, of each party.

*1130 (f) The duration of the marriage.
(g) The ability of the supported party to engage in gainful employment without unduly interfering with the interests of dependent children in the custody of the party.
(h) The age and health of the parties.
(i) The immediate and specific tax consequences to each party.
(j) The balance of the hardships to each party.
(k) The goal that the supported party shall be self-supporting within a reasonable period of time. A "reasonable period of time" for purposes of this section generally shall be one-half the length of the marriage. However, nothing in this section is intended to limit the court's discretion to order support for a greater or lesser length of time, based on any of the other factors listed in this section and the circumstances of the parties.
(l) Any other factors the court determines are just and equitable.
Cal. Fam.Code § 4320 (West 1994 & Supp. 1997). In California "[t]he moving party bears the burden of establishing a material change of circumstances since the last order was made in order to obtain modification of the spousal support order." Stephenson v. Stephenson, 39 Cal. App.4th 71, 46 Cal. Rptr.2d 8, 12 (1995). "In determining whether a change of circumstances has occurred, the trial court is required to reconsider the same standards and criteria ... it considered in making the initial long-term order at the time of judgment... ." Id. at 12-13.
¶ 17. While Mississippi and California substantive law are comparable, the chancellor properly applied Mississippi law on modification of alimony.

B. Modification of Survivor Benefit Plan Choice of Law
¶ 18. We will address the choice of law issue for modification of the benefit plan in conjunction with Mr. Johnson's second assignment of error because the two issues are so closely related.

II. MODIFICATION OF SURVIVOR BENEFIT PLAN
¶ 19. Mr. Johnson asserts that the original provision in the California divorce decree that required him to designate Ms. Pogue as the beneficiary of a survivor benefit plan was ambiguous. Mr. Johnson contends that the provision in the divorce decree was not drafted by his attorney, and thus the chancellor erred in construing any ambiguity in the provision against him. Additionally, Mr. Johnson argues that the chancellor erroneously concluded that the election of his present wife as the beneficiary of the plan precluded compliance with the California decree. According to Mr. Johnson, the equitable adjustment  the order to purchase a new annuity  fashioned by the court was inconsistent with federal law.
¶ 20. The retirement provision in the California divorce decree is this:
Upon retirement from the Naval Service, the Petitioner [Mr. Johnson] shall elect a Survivor's Benefit Plan which shall provide Respondent [Ms. Pogue] with a continuation of the payment of retirement benefits during her lifetime following the Petitioner's death. The Respondent shall receive the same percentage in those retirement benefits paid following Petitioner's death that she received in the retirement benefits paid during the Petitioner's lifetime.
The context of the words regarding "Survivor Benefit Plan" is instructive. The Survivor Benefit Plan to which the divorce provision most logically refers is one that will continue the retirement benefits that will be paid to Mr. Johnson until his death. Though this provision could have been rephrased to remove every doubt, we hold that its natural reading requires that Mr. Johnson designate Ms. Pogue on the Survivor Benefit Plan provided for military personnel for continuation of military retirement benefits if the servicemember predeceases the beneficiary. Nothing in the decree language suggests a money equivalent as sufficient compliance. If nothing else, the stability and specific provisions of the Navy's plan would not be replicated merely with an estimate of a money equivalent. A California statute does permit a *1131 court to order a former spouse with a support obligation to "elect a survivor benefit annuity," which suggests that such annuities are a frequent component of divorce decrees. Cal. Fam.Code § 2610 (West Supp. 1997). Regardless, we hold that the better reading of this divorce provision is that it specified the Navy plan.
¶ 21. The Survivor Benefit Plan applies automatically to an individual "who is eligible to participate in the Plan ... and who is married ... when he becomes entitled to retired pay, unless he elects ... not to participate in the Plan before the first day for which he is eligible for that pay... ." 10 U.S.C. § 1448(a)(2)(A) (1994). An individual may be required to provide an annuity under the plan to a former spouse. 10 U.S.C. §§ 1448(b) & 1450(f)(2) (1994). If an individual incident to a divorce is required by a court order to elect to provide an annuity to a former spouse and "such person then fails or refuses to make such an election, such person shall be deemed to have made such an election... ." 10 U.S.C. § 1450(f)(3) (1994). However, in order to impose this designation, the former spouse must send a written request to the secretary of the appropriate department along with a copy of the court order mandating such an election within one year of the date of the court order or filing involved. 10 U.S.C. § 1450(f)(3)(A-C) (1994).
¶ 22. The question for us is whether it is still possible to name Ms. Pogue as the beneficiary. The parties dispute the answer. The chancellor properly concluded that an annuity of equal value to the retirement benefits might well be the only available choice to accomplish the objective of the California divorce decree. Yet we also find that Mr. Johnson should be given the opportunity to pursue the option to change the beneficiary of the Navy plan to Ms. Pogue. The resolution of this issue rests at least initially on the military's interpretation of the applicable statutes.
¶ 23. We reverse and remand on this issue and direct the chancellor to permit Mr. Johnson to seek amendment of the Navy plan. If an additional court order appears necessary to accomplish that task, Mr. Johnson can seek one from the chancellor. However, until such time as Mr. Johnson successfully designates Ms. Pogue as the beneficiary under the Navy's Survivor Benefit Plan, he should be required to continue an alternate plan that protects Ms. Pogue's rights.

III. TERMINATION OF PERIODIC ALIMONY AND TERM LIFE INSURANCE
¶ 24. Mr. Johnson claims that the chancellor erred in failing to terminate periodic alimony and a term life insurance policy. He contends that the court should not have rewarded what he terms Ms. Pogue's idleness and lack of good faith in seeking gainful employment. Mr. Johnson also addresses the chancellor's finding that the survivor benefit plan provision was not modifiable. However, both the description of the assignment of error and the discussion concern the issue of alimony and term life insurance. We have already discussed the Survivor Benefit Plan and do not reconsider it.

A. Periodic Alimony
¶ 25. The award of periodic alimony arises from the duty of the husband to support his wife. McDonald v. McDonald, 683 So.2d 929, 931 (Miss. 1996). "The husband is required to support his wife in the manner to which she has become accustomed, to the extent of his ability to pay." Brennan v. Brennan, 638 So.2d 1320, 1324 (Miss. 1994). In determining the proper amount of alimony, the chancellor should consider the Armstrong factors set forth earlier in this opinion. Anderson v. Anderson, 692 So.2d 65, 70 (Miss. 1997). Moreover, in order to justify the modification of alimony, the moving party must prove that there has been a material change in circumstances arising subsequently to the original divorce decree. Hockaday v. Hockaday, 644 So.2d 446, 448 (Miss. 1994).
¶ 26. A somewhat different issue is also raised here: is this a modification or is it a clarification of the relationship between the initial alimony and the later retirement benefits?
¶ 27. It is uncontested that Mr. Johnson was involuntarily retired from the military in *1132 August 1994. He has been unable to find full-time employment and has been largely unemployed. The income earned by his present wife was necessary in order that his new family could meet their financial obligations. Ms. Pogue had worked only briefly, had primarily been engaged in volunteer activities, and had not continued her education as was presumed in the 1989 California decree.
¶ 28. Following the hearing, the chancellor concluded that Mr. Johnson's involuntary retirement from the military constituted a material change in circumstances justifying a modification of the alimony award. The chancellor noted that while Mr. Johnson was entitled to "lead as normal a life as reasonably possible with a decent standard of living," Ms. Pogue was entitled to a reasonable amount of alimony. The chancellor reduced alimony from $1,150 to $500 per month but refused to hold that the retirement benefits were a substitute for the alimony. The chancellor determined that Ms. Pogue was entitled both to the alimony, as reduced because of a change in circumstances, and the retirement benefit.
¶ 29. The issue has frequently arisen of whether a credit against alimony or child support obligations should be given for governmental payments to a child or former spouse, if the payments result from the previous employment of the spouse who has the support obligation. See generally, Michael A. DiSabatino, "Right to Credit on Child Support Payments for Social Security or Other Government Dependency Payments Made for Benefit of Child," 34 A.L.R. 5th 447-528 (1995).
¶ 30. The Mississippi Supreme Court has held that Social Security retirement payments to a former wife made as a result of her ex-husband's previous employment should be credited against alimony obligations. Spalding v. Spalding, 691 So.2d 435, 437 (Miss. 1997). No "change of circumstances" analysis was made, as eventual retirement must be expected when divorce decrees are written. Whether the decree has provisions anticipating retirement or whether such provisions must be added later is another question. Various observations were made by the court regarding the credit:
1) The retirement benefits were "in large part" the result of the employment of the spouse who had the support obligation, i.e., the payments were not the result of the support recipient's employment[2], id. at 439;
2) The underlying purpose of the payments was to replace the income of the spouse with the support obligation, i.e., it is expected that upon retirement the Social Security benefits are the supporting spouse's income, id.;
3) Disability benefits are treated the same way, citing Mooneyham v. Mooneyham, 420 So.2d 1072 (Miss. 1982);
4) Not only alimony, but child support obligations are to be off-set by such payments, citing Bradley v. Holmes, 561 So.2d 1034, 1036 (Miss. 1990).
¶ 31. There are distinctions in the present case. The military retirement benefits were a marital asset that was divided at the time of divorce. It is a different kind of marital asset than most in that it was a right to future income, income as the supreme court noted is supposed to replace a wage or salary. Spalding, 691 So.2d at 439. The premise for the retirement benefits is that income-earning spouse at some stage stops being an income-earner. We do not read into the 1989 divorce decree an obligation on Mr. Johnson to keep working indefinitely in order to pay his alimony. The retirement benefits are similar to Social Security benefits; the reason that a divorced spouse receives part of Social Security retirement benefits is similar to the reason that Ms. Pogue gets part of Mr. Johnson's retirement. However, unlike the Social Security cases, Mr. Johnson is potentially still going to be receiving some earned income in the future, though he was not at the time of the hearing.
¶ 32. Another issue we must consider is that written by implication into the *1133 1989 California decree is the statute that structured the award of "spousal support," i.e., alimony. We have already found that by choice of law rules Mississippi law controls on modification, but California law controls on what was meant by the original divorce decree. Sollitt v. Robertson, 544 So.2d 1378, 1381 (Miss. 1989) (full faith and credit to foreign divorce decree); Zwerg v. Zwerg, 254 Miss. 8, 17-18, 179 So.2d 821 (1965) (law of state in which decree is entered controls over whether decree is void). California holds that a "goal" of support is to make the recipient spouse "self-supporting within a reasonable period of time," which is defined as a general proposition to "be one-half the length of the marriage." Cal. Fam.Code § 4320(k) (West 1994 & Supp. 1997). A California court has considerable discretion to evaluate the circumstances before placing any limit on spousal support. Id. Those considerations underlie and in effect are incorporated into the decree.
¶ 33. Based on this statute, there is a general assumption that California spousal support terminates or is reduced at some period of time reasonably calculated to make a supported spouse self-sufficient. Though subpart (k) was only added to the support statute in 1996, it apparently codified pre-existing case-law. We have discussed the report that was prepared as part of the divorce, analyzing Ms. Pogue's wage-earning ability and her prospects for further education that would increase her potential. The evidence in the hearing below reveals that she has done little to comply with the expectations that were set out in the California decree, including getting a degree in nursing. We have been cited to California authority that inadequate diligence in seeking self-sufficiency can result in lowering or eliminating spousal support since it only supposed to continue for a "reasonable period of time." See, e.g., In re Marriage of Sheridan, 140 Cal. App.3d 742, 189 Cal. Rptr. 622, 625-26 (1983). The court upheld a refusal to continue spousal support after five years because of the supported spouse's "failure to exercise diligence in seeking gainful employment... . The ground is unreasonable delay in seeking employment consistent with the party's ability." Id. In that case, the original support award was for five years but there was an effort to have support continued.
¶ 34. This spousal support award stated that it would continue until either spouse's death, the remarriage of Ms. Pogue, or further order of the court. Once a motion for "further order" was filed, an issue would have been what we just discussed  was Ms. Pogue making reasonable efforts to permit her to support herself to some extent? Mr. Johnson brought such a motion in Mississippi. The chancellor did not evaluate anything other than whether Ms. Pogue actually was earning income, as opposed to the obligations of California law as incorporated in the decree.
¶ 35. The chancellor stated that the California decree "could have set forth in the divorce judgment" that the retirement benefits would be a credit towards spousal support. That is certainly true, but we find that the necessary implication exists that consideration must be given to whether the benefits should offset. Under California law, it may be that such an offset is on a case by case basis. One recent precedent stated that retirement is a change of circumstances like any other. A trial court is to consider "reasonable earning capacity under the circumstances," and retirement only justifies reduction or elimination of spousal support if under the enumerated factors for modification (discussed previously in this opinion) such a change is proper. Stephenson v. Stephenson, 39 Cal. App.4th 71, 46 Cal. Rptr.2d 8, 10 (1995). Among the statutory factors is the age and health of the supporting spouse, which suggests to us a statutory command that eventually a spouse in fact may retire. Otherwise the supporting spouse must continue to earn income or deplete his assets even after his otherwise effective retirement.
¶ 36. Thus under California law the issue of a credit for retirement is resolved by the statutory factors for modification. We have already found that under choice of law rules, Mississippi law on modification controls in this case. The specific modification circumstance here is retirement, and cases such as Spalding have held that disability or retirement benefits are a credit against alimony.
*1134 ¶ 37. It is true that Ms. Pogue "earned" the retirement benefits, in that her contributions to the marriage allowed Mr. Johnson to work. Yet what she earned was the right to receive a portion of the payments to be made by the government in the future, that substituted for Mr. Johnson's income once he stopped working. She justly earned a portion of those payments, but she did not earn a right to force Mr. Johnson to keep working in order to pay the same amount of spousal support as before he retired in addition to receiving her portion of the retirement. In effect, Ms. Pogue wants her income to double when Mr. Johnson retires.
¶ 38. What we are called upon to do is enforce the original divorce decree, with such modifications as are required by any change in circumstances. Despite Spalding and other cases, we do not find that the alimony obligation is the difference between the old obligation and the amount of retirement benefits. The distinction between the Social Security decisions and this case is that the retirement was a marital asset assigned to Ms. Pogue in the divorce, whose purpose is to replace income when working years have passed. The working years have not passed, and Mr. Johnson has made efforts to find other employment. Under California law, which is not controlling here, this would be categorized as a continuing but reduced earning capacity.
¶ 39. The chancellor on remand has two tasks in this area. The first is to apply the California decree as we have interpreted it here. That will require determining whether in fact Ms. Pogue has made reasonable efforts to comply with the California divorce decree's assumption that she would seek to make herself self-sufficient. The second task is under Mississippi law, now that Mr. Johnson has retired, whether he has the ability and under modification rules should have the obligation to supplement the nine dollar difference between the retirement payments due Ms. Pogue and the former spousal support. We find no reason to disturb the chancellor's decision that the reduction in support is prospective only, as Mr. Johnson could have sought clarification of his obligations far sooner after receiving eight-month advance notice of his retirement.
¶ 40. Though it is discretionary, the chancellor can consider whether in light of the California statutory assumptions that a supported spouse will make reasonable efforts to become self-supporting and that alimony "generally" continues for half the length of the marriage, whether if there is to be any additional alimony it should be rehabilitative or otherwise limited in time.

B. Term Life Insurance
¶ 41. The chancellor ordered Johnson to comply with the California divorce decree by designating Pogue as the beneficiary of his life insurance in the sum of $75,000. The chancellor also mandated that the beneficiary designation be irrevocable. The policy protects Ms. Pogue if Mr. Johnson fails to make alimony payments for some period of time and then dies. The $75,000 of coverage secured alimony payments of over a thousand dollars per month, which were reduced to $500 by the chancellor. Thus the amount of the policy is excessive considering its purpose. On remand, if alimony continues to be required, the policy amount should be calibrated to the new alimony amount.
¶ 42. Insofar as making the beneficiary irrevocable, that should be required only so long as Mr. Johnson is required to make alimony payments. Ms. Pogue is not entitled to be the beneficiary on Mr. Johnson's life after he has no further monetary obligations to her. The chancellor should take that into account in structuring any new order regarding insurance.

IV. ATTORNEY'S FEES
¶ 43. Mr. Johnson asserts that the chancellor erred in awarding Ms. Pogue attorney's fees. The award of attorney's fees in a divorce case is left to the sound discretion of the chancellor. Varner v. Varner, 666 So.2d 493, 498 (Miss. 1995). The traditional rule is that attorney's fees are not awarded unless the party requesting such fees can establish an inability to pay. Sarver v. Sarver, 687 So.2d 749, 755 (Miss. 1997); see also Setser v. Piazza, 644 So.2d 1211, 1216 (Miss. *1135 1994) (stating that standard for award of attorney's fees on a motion for modification is basically the same as that applied in original divorce action). Furthermore, the supreme court has held that "[w]hen the court denies a spouse's petition for contempt, no award of attorneys fees is warranted." Varner v. Varner, 666 So.2d 493, 498 (Miss. 1995), quoting Cumberland v. Cumberland, 564 So.2d 839, 845 (Miss. 1990).
¶ 44. Although the chancellor found that Ms. Pogue had an ability to pay her attorney, he ordered Mr. Johnson to pay her $1,500 towards those fees. He relied on Moore v. Moore, 372 So.2d 270, 272 (Miss. 1979). That case states that even when no contempt is ordered, a party who gains enforcement of a previous support order is entitled to attorney's fees. Id. That approach has rarely been applied. The only case that we have discovered that reached the same result as Moore is the recent decision by the supreme court in Mizell v. Mizell, 708 So.2d 55, 65 (Miss. 1998). The husband alleged that the chancellor erred in awarding the wife attorney's fees because she was financially able to pay her own attorney and the evidence did not justify the award. Id. In affirming the chancellor's decision, the supreme court noted while the wife possibly could have afforded to pay her own attorney, "the chancellor found that the husband's actions necessitated the institution of legal proceedings." Id. As a result, the court concluded that the chancellor did not abuse his discretion in awarding attorney's fees. Id.
¶ 45. The present case is more analogous to the precedents that apply the general bar to attorney's fees than it is to Moore and Mizell. The injured parties in both Moore and Mizell filed a complaint seeking to have their former spouses held in contempt for failure to comply with the provisions of the original divorce decree. The former spouses had defaulted on their child support payments. The supreme court concluded that the delinquencies necessitated the institution of legal proceedings and forced the injured parties to incur legal expenses. Moore, 372 So.2d at 271-72; Mizell, 708 So.2d at 65. Consequently, the court held that the "attorney's fees are the responsibility of the person required to make the child support payments." Id. In so holding, the court noted that the failure to award such fees would unfairly reduce the support awarded by the fees incurred. Moore, 372 So.2d at 272.
¶ 46. Contrary to the above cases, Mr. Johnson initiated the modification of the original divorce decree after he learned of his involuntary retirement from the military. Mr. Johnson continued to pay Ms. Pogue the same amount of support that she received prior to his retirement. Although the support was calculated based on Mr. Johnson's retirement benefits rather than from his support obligation, Ms. Pogue received almost exactly the same monthly amount. A genuine question existed as to whether Mr. Johnson was obligated to provide Ms. Pogue with both periodic alimony and retirement benefits in light of his early retirement. The record does not reveal any evidence that Mr. Johnson purposefully violated the original decree or attempted to escape his support obligations. Consequently, we find that the traditional view of awarding attorney's fees is controlling in this case. Absent a finding of contempt and an inability by Ms. Pogue to pay her own attorney's fees, the chancellor abused his discretion in awarding such fees.
¶ 47. THE JUDGMENT OF THE CHANCERY COURT OF HARRISON COUNTY IS AFFIRMED IN PART, REVERSED AND REMANDED IN PART, AND REVERSED AND RENDERED AS TO ATTORNEY FEES. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY AGAINST THE APPELLANT AND THE APPELLEE.
BRIDGES, C.J., McMILLIN, P.J., and COLEMAN, DIAZ, HERRING, HINKEBEIN, KING and PAYNE, JJ., concur.
THOMAS, P.J., NOT PARTICIPATING.
NOTES
[1] Mr. Johnson named his current wife, Vicki, rather than Ms. Pogue, as the beneficiary of the Navy Survivor Benefit Plan. Johnson asserted that the California judgment required him to name Pogue as a beneficiary of any survivor benefit plan and not specifically the Navy plan.
[2] In Bradley v. Holmes, 561 So.2d 1034, 1035-1036 (Miss. 1990), the court held that when an election was made by the beneficiary spouse to receive benefits based on someone's employment other than the spouse with the support obligation, there could still be a credit.