BARNES, J.,
for the Court:
¶ 1. William Leddell Coggins Jr. (“Bill”) appeals the judgment of the Chancery Court of Montgomery County, raising three issues. Bill claims the chancellor erred in awarding Alicia Alvarado Coggins *287 alimony and in naming her the beneficiary of $175,000 in life insurance. He also claims the chancellor abused his discretion in calculating Bill’s monthly child-support payment. We find no error regarding the child-support payment. We reverse the chancellor’s judgment and remand this case for further proceedings on the issue of alimony because the chancery court failed, when determining the amount of alimony to award, to account for $25,000 awarded to Alicia in the property distribution. We also reverse and remand on the issue of apportionment of the life insurance proceeds, and any impact the alimony determination may have upon the apportionment on remand.
STATEMENT OF FACTS AND PROCEDURAL HISTORY
¶ 2. Bill and Alicia married in February 1999. One child was born of the marriage, Izabella, in September 2003. She was diagnosed with mild autism. The couple separated in 2008. Bill works as a riverboat pilot; Alicia works part time as a licensed practical nurse. Bill also owned rental properties that the couple managed. In June 2009, the couple filed a joint complaint for an irreconcilable-differences divorce. Prior to trial, the parties reached an agreement regarding property distribution and child custody. Alicia would receive physical custody of Izabella, and she also would receive three of the jointly owned rental properties (one of which she resides in), unencumbered and valued at $57,300. Bill received ten parcels of real property with equity totaling $188,325. The couple also agreed that Alicia would receive $25,000 from Bill in the property settlement. The payment schedule for this figure was as follows: Bill would pay $10,000 within sixty days of the agreement’s execution, with the $15,000 balance paid in equal amortized monthly installments at six percent interest, for monthly payments of $456.33, beginning June 1, 2010, and continuing for thirty-six months.
¶ 3. In March 2010, trial commenced on the disputed issues: alimony, child support, apportionment between life insurance beneficiaries, and expenses associated with the maintenance of Alicia’s vehicle. On May 17, 2010, the court’s judgment was entered. The court accepted the parties’ consent to a divorce on the ground of irreconcilable differences. Bill’s adjusted gross income was $7,213.93 per month, while Alicia had $1,919.16 per month. Utilizing the statutory child-support guidelines, the chancellor required Bill to pay child support in the amount of $1,009.95 per month. Regarding alimony, the chancellor fully analyzed the Armstrong factors and determined Bill should pay Alicia $570 per month permanent periodic alimony. Additionally, the chancellor ordered Bill’s $350,000 life insurance policy to list Alicia and Izabella as named beneficiaries of $175,000 each. Finally, Bill was required to pay Alicia $3,345.41 to reimburse her for repairs to her vehicle that Bill had previously agreed to pay.[1] The parties executed their custody and property settlement agreement on May 24, 2010. The chancery court entered a judgment of divorce on June 2, 2010, from which Bill timely appealed.
STANDARD OF REVIEW
¶ 4. The scope of review in domestic-relations matters is limited by the substantial-evidenee/manifest-error rule. Wheat v. Wheat, 37 So.3d 632, 636 (¶ 11) (Miss.2010). The appellate court “will not disturb the findings of a chancellor unless the chancellor was manifestly wrong, clearly erroneous, or an erroneous legal *288 standard was applied.” Id. Questions of law are reviewed de novo. Id.
ANALYSIS OF THE ISSUES
I. ALIMONY
¶ 5. Bill contends the chancellor erred in awarding Alicia periodic alimony of $570 per month for a number of reasons, with the primary reason being the chancellor’s failure to consider the $25,000 lump-sum property distribution from Bill to Alicia to equalize the parties’ estates. We find merit to this argument.
¶ 6. In deciding whether to award alimony, the chancellor must analyze the Armstrong factors. Armstrong v. Armstrong, 618 So.2d 1278, 1280 (Miss.1993). However, before his analysis of the Armstrong factors, the chancellor, citing Johnson v. Johnson, 650 So.2d 1281, 1287 (Miss.1994), correctly noted alimony should be considered only if “an equitable division of marital property, considered with each party’s nonmarital assets, leaves a deficit for one party.” If, however, after the property division, each party’s assets and income will adequately provide for them, no further award is required. Id. Here, the chancellor determined that, in assessing the value of the separate estates of Bill and Alicia after equitable property distribution, a substantial deficiency existed that would allow the court to consider alimony.
¶ 7. The parties had already agreed upon the division of their marital assets at the time of trial, and the chancellor found Alicia had net assets of $162,486.38. For Alicia, this figure included $57,300 in unencumbered real property, cash assets totaling $95,186.38, and a vehicle with $10,000 in equity. However, this figure did not include the $25,000 lump-sum property distribution that Bill was to make to Alicia under the property agreement. Bill had net assets of $188,325 — the equity in ten parcels of property — which did not include any preexisting indebtedness existing on the property. The majority of Bill’s real-estate assets are income-producing rental properties. It was noted that the two pieces of real estate where Alicia does not reside cannot be occupied by tenants without considerable expense, thereby creating the possibility that Bill’s estate would grow in value much quicker than Alicia’s estate.
¶ 8. We agree with Bill that the chancellor’s omission of the $25,000 lump-sum property distribution in Alicia’s estate was error because the chancellor based the necessity of an Armstrong analysis on an inaccurate calculation of the parties’ estates. However, we do not go so far as to say that the award of alimony itself was error; that issue and the respective amount which might be awarded will be left to the chancellor’s discretion once he factors in the $25,000 payment to Alicia’s estate.
¶ 9. Using the chancellor’s figures, Alicia’s estate was valued at $25,838.62 less than Bill’s ($162,486.38 versus $188,325). Adding the $25,000 payment to Alicia’s estate would even out the disparity between the values of the parties’ property distribution, giving Alicia’s estate a value of $187,486.38. Less the $25,000, Bill’s estate would be valued at $163,325. It is well established that while they are distinct concepts, property division and alimony should be considered together by the chancellor. Ferguson v. Ferguson, 639 So.2d 921, 929 (Miss.1994). We note that the chancellor did not take into account that Bill would be making the $25,000 payment over the next three years. Therefore, we find it necessary to reverse and remand on the issue of whether an Armstrong analysis and alimony is warranted after Bill’s $25,000 payment to Alicia is considered.
*289 ¶ 10. In response to Bill’s argument, Alicia states that future payments to satisfy property settlement agreements are not subject to equitable distribution and should not be considered by the chancellor in determining the marital estates. However, Alicia cites no authority for her proposition. Additionally, this is not the situation at bar. The issue over the $25,000 payment is not part of the determination of equitable distribution, but of alimony. Nor is the $25,000 part of the marital estate, but it became a part of Aicia’s individual estate after the marital estate was divided. She also argues that the $25,000 payment is “essentially” a “lump sum alimony payment” which, at the time of the court’s ruling, would not have been transferred, due, or owing. We find no support in the record for the contention that the $25,000 was for “alimony.” On cross-examination, while discussing what property she received, Alicia agreed with Bill’s counsel that as “part of the deal” Bill “pitched in another $25,000 on top of’ the other assets she received. The record does not relate this payment to alimony.
¶ 11. Further, the court was certainly aware that the $25,000 was part of the property settlement at the time of its ruling on May 17, 2010, even if the agreement itself had not yet been executed, for it was mentioned by Bill’s counsel at the beginning of the trial on March 26, 2010. Even though the first installment of $10,000 was not yet “due or owing” at that time (but due sixty days from May 26, 2010 — the agreement’s execution), that does not mean it or the other $15,000 in installments over thirty-six months could not be taken into consideration to determine the amount of alimony.
¶ 12. For the above reasons, we accordingly reverse and remand on this issue.
II. LIFE INSURANCE
¶ 13. Bill had a life insurance policy for $350,000 on his life. At trial, the parties disputed whether the entire amount should be for the benefit of Izabel-la or a portion reserved for Alicia. The chancellor found that the proceeds should be apportioned equally with Izabella and Alicia both receiving $175,000. Bill asserts the chancellor erred in apportioning $175,000 to Alicia.
¶ 14. Bill argues that the amount is excessive, citing two cases which this Court remanded for a reexamination of the amount awarded to life insurance beneficiaries when that award was tied to an alimony obligation which was also remanded: Beezley v. Beezley, 917 So.2d 803, 808 (¶ 17) (Miss.Ct.App.2005) and Johnson v. Pogue, 716 So.2d 1123, 1134 (¶41) (Miss.Ct.App.1998). However, in both of these cases, the life insurance policy was required in order to protect the ex-wife should the ex-husband fail to make alimony payments and later die. Id. Bill claims that is the same situation here: the $175,000 award of life insurance coverage was used to secure the $570 per month grant of alimony for Aicia.
¶ 15. The chancellor made the following statement in his opinion about the life insurance beneficiaries: “The Court is of the opinion that with the award of alimony and support, that both the wife and minor child should be the beneficiaries of the $350,000 life insurance available on the life of the Defendant.” While the chancellor did not require Bill to obtain a life insurance policy, as was the case in Beezley and Johnson, the chancellor ordered a division of an already existing policy, with that decision apparently connected with the award of alimony and/or child support, both of which are proper. “Life insurance serves a variety of purposes in divorce proceedings,” such as to replace alimony, *290 child support, or as part of the property-division. Deborah H. Bell, Mississippi Family Law § 10.07(2) (2005). However, as Professor Bell warns, if life insurance is associated with child support, it should be designated as such to avoid subsequent litigation. Id. Since the chancellor did not specifically explain the reason for his ruling, and the award of alimony may be changed on remand, we find it proper for the chancellor to reconsider the apportionment of life insurance proceeds on remand as well. Therefore, we reverse and remand for the chancellor to reexamine the percentage awarded to the policy’s beneficiaries, after the chancellor reexamines the alimony issue.
III. CHILD SUPPORT
¶ 16. The chancellor found Bill’s adjusted gross income to be $7,213.93 per month.[2] The court found that no criteria under Mississippi Code Annotated section 43-19-103 (Rev.2009) applied to justify a variance to the statutory guidelines of child support under section 43-19-101 (Rev.2009) of the Mississippi Code Annotated. Therefore, the court applied the statutory amount of fourteen percent to Bill’s adjusted gross income, resulting in $1,009.05 per month child support. In compliance with Mississippi Code Annotated section 43-19-101(4), the chancellor also found that since Bill’s annual income exceeded $50,000 per year, the application of the percentages listed in the statutory guideline was reasonable, in light of the child’s standard of living before the divorce and because of any unforeseen expenses from her disability.
¶ 17. The chancellor rejected Bill’s argument that the monthly expenses incurred from his rental investments should be deducted from his gross income, which he receives from his primary employer, Florida Marine Transporters. Bill raises this argument again on appeal.
¶ 18. On his Rule 8.05 financial statement dated March 2010, Bill reported his monthly net income for adjusted gross income purposes to be $4,290.49. See UCCR 8.05. This figure includes $9,641.07 in gross income from his employer. He improperly deducted “a loss” from rental income in 2009 of $2,460.03.[3] His itemized monthly deductions totaled $2,890.55; however, this figure improperly included $150, which is one-half the cost of health insurance for his child, and is not a mandatory deductible expense under section 43-19 — 101(l)(b). See also Wells v. Wells, 800 So.2d 1239, 1247 (¶ 21) (Miss.Ct.App.2001) (Court-ordered medical and dental insurance is not a mandatory deduction under section 43-19-101(1).).
¶ 19. The inclusion of income and deductions for calculating adjusted gross income for child support is primarily mandated by statute. According to section 43-19-101, in calculating gross income, the chancellor must consider “gross income *291 from all potential sources,” including wages and salary income, income from self-employment, and income from investments. As the chancellor explained, section 48 — 19—101(3)(b) lists several deductions that may be subtracted from the gross income figure, such as federal, state, and local taxes, social-security contributions, and mandatory retirement and disability contributions, but it does not list business expenses. Additionally, the Mississippi Supreme Court has allowed the deduction of legitimate business expenses in the case of a self-employed payor-spouse. See Nix v. Nix, 790 So.2d 198, 199-200 (¶¶ 3, 5) (Miss.2001) (The chancellor considered the payor-parent’s legitimate business expenditures for reasons of equity, in order to determine available income for child support; he was a self-employed plumber.). However, the chancellor found no caselaw, nor do we, that allows for a deduction of expenses related to investments or supplemental business enterprises, which would be taken from the gross income of the payor-spouse. Therefore, in arriving at the adjusted gross income figure, the chancellor must include income from many sources, but not all expenses. The allowable deductions for this figure are statutory, and they differ from the allowable deductions for income tax purposes, upon which Bill appears to base his calculations.
¶ 20. Bill is not self-employed; his position as a riverboat pilot provides a set salary. Alternatively, his rental properties, which he began purchasing in 1995, are a secondary source of income that he voluntarily continued, even though they were operating at a loss at the time of trial. If Bill opts to continue this rental venture at a loss, it should not be done to the detriment of his child. The chancellor did not abuse his discretion in failing to subtract Bill’s losses on his rental properties from his regular salary earnings to determine his adjusted gross income for child support.
¶ 21. THE JUDGMENT OF THE CHANCERY COURT OF MONTGOMERY COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY TO THE APPELLANT AND THE AP-PELLEE.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, ROBERTS, MAXWELL AND RUSSELL, JJ„ CONCUR. CARLTON AND FAIR, JJ., NOT PARTICIPATING.

. On appeal, Bill does not contest this ruling.

. The chancellor found Bill's gross monthly income to be $9,641.07, taking mandatory deductions for state and federal income taxes, social security, and Medicare of $2,740.55 (properly excluding one-half of the child's health insurance expense which Bill had listed as a deduction), for an adjusted gross income of $6,900.52. Additionally, the chancellor noted Bill received a total of $3,761 for an income-tax refund for the taxable year 2008, giving him an additional $313.41 per month in income, for an adjusted gross income total of $7,213.93. The chancellor did not include as income the $1,200 per month that Bill reported as monthly rental income he received in 2009, but Alicia does not contest the chancellor’s adjusted gross income figure.

. Bill reported monthly rental income of $1,200 and expenses of $3,660.03, which included taxes and the mortgages; therefore, he concluded he had a monthly loss of $2,460.03.